**Victor E. BRAUN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 91–70720.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 1993.

Decided May 12, 1993.

Roger C. Wolf, Tucson, AZ, for petitioner.

Stewart Deutsch, Office of Immigration Litigation, Dept. of Justice, Washington, DC, for respondent.

Before SCHROEDER, PREGERSON, and D.W. NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

Victor E. Braun ("Braun") appeals the decision of the Board of Immigration Appeals ("BIA") finding him statutorily ineligible for a waiver of deportation under Section 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f) ("the Act"). Braun also appeals the BIA's alternative ruling that, even if it had found him to be statutorily eligible, it still would exercise its discretion to deny a waiver in his case. We reverse, holding that Braun was statutorily eligible for a waiver, and that the BIA abused its discretion in denying the waiver.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Braun is a native and citizen of Mexico who entered the United States as a lawful permanent resident in 1974 as the spouse of a United States citizen, Romelia Cruz Duarte ("Duarte"). Braun had married Duarte in Mexico on February 27, 1974, admittedly for the sole purpose of obtaining an immigrant visa. Approximately one year later, he divorced Duarte and married Bertha Rosalva Hernandez–Martinez ("Hernandez–Martinez"), a Mexican citizen who had entered the United States on a border crossing card. Braun and Hernandez–Martinez had a United States citizen child in 1975. With the exception of short visits to Mexico, the family has resided continuously in the United States since 1975.

When Braun applied for citizenship, it was determined that he had previously married Hernandez–Martinez in Mexico in 1973, a marriage which remained in effect when Braun married Duarte in 1974. It was also determined that Braun had a child with Hernandez–Martinez in Mexico before he married Duarte. Braun failed to mention both the marriage and his child on his visa application.

As a result, on April 10, 1985, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause charging Braun with deportability under Section 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1), as an alien excludable under Sections 212(a)(14) and 212(a)(20), 8 U.S.C. §§ 1182(a)(14) and (20), for having entered the United States without a valid labor permit and without valid immigration documents.

At a hearing before an immigration judge on July 17, 1985, Braun argued for a waiver of deportability under Section 241(f) of the Act, 8 U.S.C. § 1251(f).[1] This section provides for a discretionary waiver of deportability for an alien who is the spouse, parent, or child of a United States citizen, and who was excludable at the time of entry as an alien who procured a visa by fraud. This section further requires that the alien be "otherwise admissible."

The INS argued that Braun was not statutorily eligible for a waiver of deportation on the grounds that he was not "otherwise admissible" because he had committed bigamy, a crime of moral turpitude which would make him excludable under § 212(a)(9) of the Act, which excludes:

> aliens who have been convicted of a crime involving moral turpitude (other than a purely political offense), or aliens who admit having committed such a crime, or aliens who admit committing acts which constitute the essential elements of such a crime.

8 U.S.C. § 1182(a)(9). Braun testified that he did not terminate his first marriage to Hernandez–Martinez because he believed that it was invalid. He stated that before he married Duarte, he consulted a Mexican attorney who erroneously informed him that the first marriage was invalid because Braun was underage at the time of the marriage and had not obtained parental consent.

The immigration judge found Braun eligible for a waiver under § 241(f). She granted

1. Although the provisions of § 241(f) were changed by the Immigration Act of 1990, the new provisions do not apply to these deportation proceedings, for which notice was provided to the alien before March 1, 1991. The former statute, applicable in this case, provides:

(1)(A) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in subsection (a)(19)) who—

(i) is the spouse, parent, or child of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and
(ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility specified under paragraphs (14), (20), and (21) of section 212(a) which were a direct result of that fraud or misrepresentation.
(B) A waiver of deportation for fraud or misrepresentation granted under subparagraph (A) shall also operate to waive deportation based on the grounds of inadmissibility at entry described under subparagraph (A)(ii) directly resulting from such fraud or misrepresentation.

the waiver primarily on the hardship it would cause Braun's U.S. citizen child to be returned to Mexico: the child was not fluent in Spanish and had a learning disability for which there are no services in Mexico. The immigration judge also noted the equities in Braun's favor: he had never been convicted of any crimes, he had been steadily employed, he had paid income tax, and he owned a home in the United States.

The INS appealed to the BIA. Reversing, the BIA found that Braun was excludable under § 212(a)(9) as an alien who had admitted committing the essential elements of bigamy, a crime of "moral turpitude." The BIA further noted that even if Braun had been statutorily eligible, it would have denied him relief in an exercise of discretion under § 241(f). Though it noted Braun's "significant equities," the BIA determined that Braun had pursued an "elaborate plan" to defraud the United States by which he eventually brought his first wife to the United States after his own fraudulent entry. Braun timely appealed.

## II. ANALYSIS

### A. Eligibility for waiver of deportation under § 241(f).

 We review *de novo* an agency's interpretation of a statute. *Purba v. I.N.S.*, 884 F.2d 516, 517 (9th Cir.1989). We review the BIA's factual finding of statutory ineligibility for substantial evidence. *Berroteran–Melendez v. I.N.S.*, 955 F.2d 1251, 1255 (9th Cir. 1992). "The substantial evidence standard does not permit the Court to reverse the BIA solely because the Court disagrees with the BIA's evaluation of the facts, but requires that the BIA's conclusion, based on the evidence presented, be substantially reasonable." *Id.* (internal quotations omitted).

Congress enacted the § 241(f) waiver of deportation as a humanitarian gesture to preserve families comprised in part of United States citizens or lawful permanent residents. *I.N.S. v. Errico*, 385 U.S. 214, 225, 87 S.Ct. 473, 480, 17 L.Ed.2d 318 (1966). The effect of § 241(f) is to transform an individual who enters the United States with an invalid immigrant visa to the status of one who entered as a nonpreference immigrant,

despite the fact that a valid immigrant visa would never have been available to the individual at the time of entry. *See Matter of Anabo*, 18 I & N Dec. 87 (1981). Because Braun entered with a fraudulent visa, procured via his sham marriage, and because he is the father of a U.S. citizen, Braun would be eligible for relief if he is determined to be "otherwise admissible" aside from his initial fraudulent entry.

The BIA stated that Braun maintained throughout the deportation proceedings that he did not intentionally commit bigamy because he believed his first marriage to be invalid. Paradoxically, however, the BIA concluded that Braun had "admitted to having committed the offense of bigamy in that he admits that he *knowingly* entered into a second marriage while [he] was already married to another individual" (emphasis added). Because the BIA determined that "bigamy is an offense which involves moral turpitude within the meaning of the immigration laws," it found that Braun was not "otherwise admissible" and, therefore, statutorily ineligible for relief under § 241(f).

 The BIA erred in finding that Braun had admitted to the essential elements of bigamy. Though he did admit to *marrying* Duarte while validly married to Hernandez–Martinez, he did not admit that he did so *knowingly*. Because intent is an element of bigamy in Arizona, Braun did not admit to all of the essential elements of a crime of moral turpitude, as required by § 212(a)(9).

The Arizona bigamy statute in effect at the time of Braun's second marriage to Duarte provided that "[a] person having a spouse who marries any other person is guilty of a class 5 felony." Ariz.Rev.Stat.Ann. § 13–3606. Though not expressly stated in the statute, intent is an element of the crime; to obtain a conviction for bigamy, the state must prove that the defendant *intended* to marry two spouses. *Ford v. State*, 192 P. 1117, 1119 (1920).

The INS does not dispute that intent is required to obtain a conviction for bigamy in Arizona. The INS also concedes that Braun has never admitted to marrying a second time knowing he had a spouse living. The

main point of disagreement is whether Braun in fact knew that his first marriage to Duarte was valid when he married Hernandez–Martinez. This inquiry, however, is not allowed under § 212(a)(9).

Section 212(a)(9) provides three means of finding an alien excludable for having committed a crime of moral turpitude; the alien must have been convicted of such a crime, must have admitted committing such a crime, or must have admitted committing acts which constitute the essential elements of such a crime. By limiting excludability to these three situations, Congress has precluded immigration officials from determining guilt or innocence. Section 212(a)(9) only contemplates exclusion of aliens who have been convicted or who freely and voluntarily admit their guilt. It does not contemplate exclusion of an alien by transforming a deportation hearing into a criminal trial.

In the instant case, Braun was not convicted of bigamy, nor did he admit to committing the crime or its essential elements. This is where the inquiry must end. Braun was not on trial for bigamy, and the BIA was not empowered to weigh evidence to find him guilty of that crime. Because Braun did not admit to the essential intent element of bigamy, the BIA erred in finding him excludable under § 212(a)(9).

### B. Discretionary denial of waiver.

■ After finding Braun statutorily ineligible for a waiver, the BIA held in the alternative that, even if Braun had been eligible, it would have exercised its discretion to deny the waiver. This was an abuse of discretion, as the BIA improperly considered the initial fraudulent entry as an adverse factor.

We review the BIA's refusal to grant a waiver for an abuse of discretion. *Hernandez–Robledo v. I.N.S.*, 777 F.2d 536, 540 (9th Cir.1985). We will not disturb the BIA's ruling unless it has acted arbitrarily, irrationally or contrary to law. *Israel v. I.N.S.*, 785 F.2d 738, 740 (9th Cir.1986). The BIA acts

arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so. *Id.* In addition, the BIA abuses its discretion if it considers an irrelevant factor when determining whether to grant a waiver under § 241(f). *Siang Ken Wang v. I.N.S.*, 413 F.2d 286, 287 (9th Cir.1969).

As originally drafted, the forgiveness provision of § 241(f) was mandatory—the INS was *required* to grant a waiver of deportation to an alien who had entered through fraud or misrepresentation, but who had close family ties to a United States citizen or permanent resident, provided that the alien would have been admissible but for the fraudulent entry.[2] However, differing judicial and administrative interpretations of § 241(f) had made it almost impossible for the INS to administer the section uniformly. *See* H.R.Rep. No. 264, 97th Cong., 1st Sess. (1981), *reprinted in* 1981 U.S.Code Cong. & Admin.News 2577, 2593–94. To promote efficient administration of the statute, Congress amended § 241(f) in 1981 to make the waiver explicitly available to immigrants in previously doubtful cases, such as where the visa had been procured innocently rather than fraudulently, or where the alien did not possess a valid labor permit or valid immigration documents as a direct result of the fraudulent entry. At that time, the waiver was also made discretionary.

The legislative history of § 241(f) makes it clear that the amendments were intended to promote efficient administration of the section by clarifying the meaning of the phrase "otherwise admissible." While § 241(f) was never intended to be a "charter of amnesty, waiving all restrictions for those who had entered the United States through fraud," it was specifically intended to waive those grounds for deportation arising out of misrepresentations in arranging entry. *See id.* at 2594. There is no indication in the legislative history that by changing the waiver from mandatory to discretionary, Congress intended that the BIA use this discretion to deny

**2.** The former version of § 241(f), 8 U.S.C. § 1251(f) stated: The provisions of this section relating to deportation of aliens ... on the ground that they were excludable at the time of entry as aliens who have sought to procure, or

have procured visas ..., by fraud or misrepresentation *shall not apply* to an alien otherwise admissible at the time of entry who is the spouse, parent, or child of a United States citizen or ... permanent residen[t].

relief to aliens who were previously entitled to a waiver as a matter of right without a sound reason for doing so.

In denying relief in the exercise of its discretion, the BIA stated that Braun "not only entered into a fraudulent marriage upon his initial entry, but he pursued an elaborate plan by which he eventually brought his first wife to the United States sometime after he had committed the fraud by which he obtained his own status." Thus, it is clear that the BIA gave considerable weight to Braun's initial fraudulent entry in denying a waiver in the exercise of discretion. This was erroneous.

Under the pre-amendment mandatory version of § 241(f), the initial fraudulent entry was necessarily forgiven, as the alien was entitled to a waiver of deportation despite the fraud. If, under the amended statute, immigration officials were permitted to rely on the initial fraud as a basis for denying the waiver in the exercise of discretion, a waiver could theoretically be denied in every case arising under § 241(f); the condition that made the alien eligible for relief would be the very condition which would serve as the justification for denying relief. Such a result surely was not contemplated by Congress.

The BIA itself has recognized that the initial fraud should not be considered as an adverse factor when making a discretionary decision to grant a waiver. The BIA has addressed the grant of a discretionary waiver under § 212(i), 8 U.S.C. § 1182(i). This statute is similar to § 241(f) in that it provides for a discretionary waiver for an alien who entered the country fraudulently and who is the parent of a United States citizen child, if the alien is otherwise admissible.[3]

In *Matter of Alonzo,* 17 I & N Dec. 292 (BIA 1985), the BIA granted a discretionary waiver under § 212(i) to a husband and wife who had obtained visas by fraud and misrepresentation. The BIA explained the rationale behind forgiveness of the initial fraud as follows: "Obtaining visas by fraud and misrepresentation shows disrespect for the law, but this is the action for which they seek to be forgiven and should not be held as an adverse factor." *Id.* at 294. The BIA further stated

> It is felt that the birth of a United States citizen child, whether born during a lawful or unlawful stay of the parent or parents in the United States, must be accorded considerable weight in the adjudication of a section 212(i) waiver application, and *in the absence of other strong countervailing factors, the application for waiver should be granted.*

*Id.* (emphasis added); *see also Matter of Da Silva,* 17 I & N Dec. 288 (BIA 1979) (initial fraud may not be considered as an adverse factor under § 212(i)).[4]

The INS appears to have recognized the impropriety of considering the initial fraud when determining whether to exercise a discretionary waiver under § 241(f). For example, in *Liwanag v. I.N.S.,* 872 F.2d 685, 687 (5th Cir.1989), the INS conceded that in such a case "the original fraudulent act should not be considered as an adverse factor in the balancing equation." The court noted that the statute allowing for discretionary waiver of deportability "presupposes that the petitioner has committed an act justifying deportation." *Id.* The INS made a similar concession under very similar circumstances in the Ninth Circuit case of *Start v. I.N.S.,* 803 F.2d 539, 542 (9th Cir.1986) (citing *Hernandez–Robledo,* 777 F.2d at 541), *withdrawn,*

---

**3.** The applicable version of § 212(i) provides that "[a]n alien who is the spouse, parent, or child of a United States citizen or of an alien lawfully admitted for permanent residence and who is excludable because ... he seeks or has sought to procure, or who has procured, a visa or other documentation, or entry into the United States by fraud or misrepresentation ... may be granted a visa and admitted to the United States for permanent residence, if otherwise admissible, if the Attorney General in his discretion has consented to the alien's applying or reapplying for a visa and for admission to the United States."

**4.** In contrast, when the statute does not contemplate forgiveness of the initial fraudulent entry, the BIA has considered that fraud as an adverse factor. For example, when deciding whether to grant asylum under § 208 of the Act, 8 U.S.C. § 1158, the BIA held that "[a]ttempting entry into the United States by way of fraudulently obtained documentation has consistently been considered a strong negative discretionary factor." *Matter of Salim,* 18 I & N Dec. 311, 314 (BIA 1982).

862 F.2d 787 (9th Cir.1988). Because the INS conceded this point in *Liwanag* and in *Start,* the court did not address the issue further.

The BIA's use of Braun's initial fraudulent entry as a basis for denying him relief is not in accord with the BIA's own decisions, with past agency action, or with congressional intent. Therefore, we hold that the BIA abused its discretion by considering Braun's initial fraud as an adverse factor under § 241(f).

Because the BIA relied improperly on Braun's initial fraud, our next inquiry is whether there are any other adverse factors in the record which would support a denial of a § 241(f) waiver. *See Liwanag,* 872 F.2d at 687. The INS contends that Braun "brought his first wife to the United States" as part of an "elaborate plan" to defraud the government. There is no evidence that such a plan existed. Though Braun did marry Hernandez–Martinez a second time in this country, she entered the country legally with a border crossing card. Approximately two years later, she and Braun entered into a legitimate marriage which is still intact almost twenty years later.[5] In short, Braun's alleged "elaborate plan" to defraud the government boils down to nothing more than his fraudulent entry.

In marked contrast to the absence of adverse factors, Braun has considerable equities weighing in his favor. He has resided in the United States for almost twenty years. During that time, he has been steadily employed, he has paid income taxes, and he has no criminal record whatsoever. He and his wife own a home and, most importantly, they are the parents of a United States citizen child.

Ordinarily, upon finding that the BIA relied on an improper factor in exercising its discretion, we would remand to the BIA for reconsideration. *See Siang Ken Wang,* 413 F.2d at 287 (remanding where one of four adverse factors was improperly considered). In this case, however, there are *no* valid adverse factors in the record to counterba-

lance the significant equities in Braun's favor. Consequently, any decision to deny Braun a waiver would be unreasonable and arbitrary.

In sum, the BIA erroneously determined that Braun was ineligible for a waiver under § 241(f); Braun did not admit to the essential elements of a crime of moral turpitude and so was not otherwise inadmissible. The BIA also erred in including Braun's initial fraudulent entry in its balancing test. Aside from Braun's initial fraud, there are no adverse factors which could support a rational denial of waiver in this case.

REVERSED.

---

5. Hernandez–Martinez and the couple's Mexican citizen child are now eligible for legalization under § 244A of the Act.