**Filipinas Lucero CASEM, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 92–70039.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1993.

Decided Nov. 1, 1993.

Russell L. Marshak (John M. Levant, with him on the brief), Popkin, Shamir & Golan, Los Angeles, CA, for petitioner.

David M. McConnell (Anthony W. Norwood, with him on the brief), U.S. Dept. of Justice, Washington, DC, for respondent.

Before: WOOD,* Senior Circuit Judge, REINHARDT and RYMER, Circuit Judges.

HARLINGTON WOOD, Jr., Senior Circuit Judge:

Filipinas Lucero Casem faces deportation for lying about her marriage. Finding the Immigration and Naturalization Service did not consider all relevant factors in making its decision, we reverse and remand for proceedings consistent with the following opinion.

## I. BACKGROUND

In November 1983 Filipinas Lucero Casem, a citizen of the Philippines, applied for a visa to the United States as an unmarried child of a permanent United States resident pursuant to 8 U.S.C. § 1153(a)(2) (now codified at 8 U.S.C. § 1153(a)(2)(A)). Shortly thereafter Casem discovered that she was pregnant. On December 12, 1983, Casem married the father of her unborn child, Eduardo Valera, also a citizen of the Philippines, in their native land. Six days later Casem entered the United States as a "second preference immigrant," i.e. as an unmarried child of a resident, her father.

On May 25, 1984, Casem's son was born in this country. On November 27, 1984, Casem returned to the Philippines to visit her husband. The couple remarried in a church ceremony on January 6, 1985. Casem then came back to the United States on March 5, 1985. On March 7, 1985, she submitted a visa petition on behalf of her husband and listed their wedding date as January 6, 1985. The Immigration and Naturalization Service ("INS") interviewed Casem regarding the petition on July 17, 1985. At the interview, Casem admitted that she had previously married her husband on December 12, 1983, and she withdrew her petition.

On July 18, 1985, the INS issued an Order to Show Cause ("OSC") to Casem. The OSC charged Casem was deportable under 8 U.S.C. § 1251(a)(1). That statute classifies an alien as being "deportable" if the alien was "excludable by law" at the time of entry to the United States. An alien may be "excludable" for dozens of reasons; the OSC stated Casem was excludable for the following three: (1) for committing fraud or misrepresentation to procure a visa or entry into the country by claiming to be unmarried, 8 U.S.C. § 1182(a)(19) (now codified at § 1182(a)(6)(C)(i)); (2) for entering the country to perform skilled or unskilled labor without certification from the Secretary of Labor, *id.* § 1182(a)(14) (now codified at § 1182(a)(5)(A)); and (3) for applying for admission without possessing a valid entry document, *id.* § 1182(a)(20) (now codified at § 1182(a)(7)(A)).

At a hearing before an Immigration Judge on April 30, 1986, Casem admitted she was deportable under section 1182(a)(19) by virtue of having obtained her visa by fraud or willful misrepresentation of material fact. In return for this admission, the government dropped the other charges against Casem. The sole issue then remaining was whether Casem was entitled to a waiver of deportation under section 1251(f) (now codified at § 1251(a)(1)(H)). That section allows the Attorney General at her discretion to waive deportation of an alien who gained entry or a visa through fraud or misrepresentation if that alien is a "spouse, parent, son, or daughter" of a citizen or alien admitted for permanent residence. *Id.*

Casem argued that the equities favor waiving her deportation. Casem has extensive family in the United States, has a job here, and has no criminal record. Casem asserted that the sole reason for marrying her hus-

* The Honorable Harlington Wood, Jr., United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

band before leaving the Philippines was to avoid her child being born out of wedlock.

Casem also argued that if she were deported, her son, a United States citizen, would suffer. The son, now nine years old, had spent virtually his entire life in the United States, but likely would accompany Casem to the Philippines upon her deportation. Casem argued that if her son returned to the United States upon reaching maturity, he would be deficient in education, language ability, social contacts, and cultural acclimatization compared to citizens who spend their entire pre-adult life in this country.

The Immigration Judge balanced the equities in this case and on June 2, 1986, denied Casem a waiver of deportation. On one hand, the judge noted that Casem was now the mother of a United States citizen, had a large extended family in the United States, including her father, stepmother, and brothers, has been a person of good moral character, and was employed. "She is in fact behaving," stated the judge, "as we would wish someone to behave who wishes to seek the privileges of being a resident of this country...." On the other hand, the judge found Casem had not disclosed her marital status to the INS for a considerable period of time, had come to this country so that her child could be born here and become a United States citizen, and planned to later bring her husband to this country. The judge characterized her conduct as "a deliberate deception" and refused to exercise his discretion to grant a waiver. The judge failed to consider the hardship deportation would have on Casem's son. Casem was allowed to exit the country voluntarily, in lieu of deportation, provided she left before August 1, 1986.

Casem appealed the Immigration Judge's decision to the Department of Justice's Board of Immigration Appeals ("BIA"). Four years later, and without explanation for its lengthy delay, the BIA issued its decision dismissing Casem's appeal. The BIA also failed to address the hardship to Casem's son.

## II. DISCUSSION

The central issue in this case is whether the BIA must examine the hardship to Casem's son that would result from the deportation of his mother. A statutory provision similar to section 1251(a)(1)(H), the provision at issue here, allows the Attorney General at her discretion to suspend a deportation order if, among other things, "deportation would ... result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence...." 8 U.S.C. § 1254(a)(1). Although section 1254(a)(1) encompasses aliens excludable at the time of entry due to fraud or misrepresentation (as well as many other categories of aliens), that section requires seven years of continuous presence in the United States immediately preceding the date of application for suspension of deportation, a requirement Casem could not have satisfied at the time. *See id.*

Unlike section 1254(a)(1), section 1251(a)(1)(H), which is limited to aliens excludable at the time of entry due to fraud or misrepresentation, contains no "extreme hardship" provision or other limitations on the discretion of the Attorney General. 8 U.S.C. § 1251(a)(1)(H) (placing the waiver decision "in the discretion of the Attorney General"). We cannot judicially combine two separate statutory provisions into one. Because section 1251(a)(1)(H) leaves the matter to the discretion of the Attorney General, we review the BIA's determination using the abuse of discretion standard. *Hernandez–Robledo v. I.N.S.*, 777 F.2d 536, 540 (9th Cir.1985). The abuse of discretion standard requires that the BIA take into account *all relevant factors* without acting in an arbitrary, illegal, or irrational fashion. *Braun v. I.N.S.*, 992 F.2d 1016, 1019 (9th Cir.1993). We shall not assume the BIA considered factors that it failed to mention in its decision. *Id.*

Both the Immigration Judge and the BIA completely failed to address the effect Casem's deportation will have on her son, a nine-year-old United States citizen for whom the Philippines is a foreign land, obviously one of many relevant considerations. Although Casem appealed the Immigration Judge's decision in June 1986, and filed her

brief in 1987, the BIA did not render a decision until October 1991. In that lengthy interval, Casem's son aged from two- to seven-years old. As best we can tell, the delay in addressing Casem's appeal rests squarely with the INS—a delay which is not as exceptional as could be desired. *See Rodriguez–Barajas v. I.N.S.*, 992 F.2d 94, 97 (7th Cir. 1993) (noting "unconscionable" seven-year delay between petitioner's appeal and BIA's decision); *Saywack v. Attorney General*, No. 91 Civ. 7797, 1993 WL 205121, at *1 (S.D.N.Y. June 9, 1993) (discussing BIA's series of "lengthy and unexplained delays").

We have admonished the INS in section 1254(a)(1) cases to appraise carefully the effect deportation would have on an alien's children who are United States citizens. *See Cerrillo–Perez v. I.N.S.*, 809 F.2d 1419, 1426 (9th Cir.1987) (BIA must "consider the specific circumstances of citizen children and reach an express and considered conclusion as to the effect of those circumstances upon those children."). Congressional intent was similar with regard to section 1251(a)(1)(H). Congress enacted the waiver provision of section 1251(f), the predecessor to section 1251(a)(1)(H), to prevent the break-up of families comprised in part of American citizens or lawful permanent residents. *See I.N.S. v. Errico*, 385 U.S. 214, 225, 87 S.Ct. 473, 480, 17 L.Ed.2d 318 (1966). Congress "was intent upon granting relief to limited classes of aliens whose fraud was of such a nature that it was more than counterbalanced by after-acquired family ties." *Reid v. I.N.S.*, 420 U.S. 619, 630, 95 S.Ct. 1164, 1170, 43 L.Ed.2d 501 (1975); *see also Braun*, 992 F.2d at 1018 (discussing humanitarian purpose of statute).

In its brief the respondent claims that the BIA takes into account the family ties of aliens requesting waivers of deportation. The inquiry into family ties, however, must not be limited to noting the benefits of living near one's immediate or extended family. The BIA also must examine the impact of "untying" the family ties Congress sought to safeguard. That examination is especially important in this case in light of the BIA's delays, during which time Casem's son began attending school in this country. *See Ramos v. I.N.S.*, 695 F.2d 181, 187 n. 16 (5th Cir. 1983) (noting the "great difference between the adjustment required" of infants going to parent's homeland and school age children facing same fate); *Prapavat v. I.N.S.*, 662 F.2d 561, 562–63 (9th Cir.1981) (discussing potential hardship to six-year-old American in accompanying parents to foreign country); *see also Jara–Navarrete v. I.N.S.*, 813 F.2d 1340, 1342 (9th Cir.1986) (directing INS to give United States citizen children individualized consideration); *Ravancho v. I.N.S.*, 658 F.2d 169, 175–77 (3d Cir.1981) (instructing INS to consider effect move to Philippines would have on eight-year-old American citizen). Discretion, although a broad concept, is not so all-encompassing that it permits the BIA in a section 1251(a)(1)(H) proceeding to ignore totally a plainly relevant factor. Although the statute does not set forth that factor for particular consideration specifically as done in section 1254(a)(1), in making the epochal decision of whether to allow an alien to remain legally with her family in the United States the BIA must consider hardship to the children of potential deportees along with all other relevant factors.

## III. CONCLUSION

Having found the BIA failed to consider all relevant factors, we must reverse and remand this case for further proceedings. We need not reach Casem's remaining arguments. The BIA should note, however, that this circuit withdrew an authority upon which it relies heavily, and the decision therefore is not controlling. *Compare Start v. I.N.S.*, 803 F.2d 539 (9th Cir.1986) (allowing fraudulent conduct to be divided for separate consideration in § 1251(f) waiver proceedings), *withdrawn*, 862 F.2d 787 (9th Cir.1988), *with Braun v. I.N.S.*, 992 F.2d 1016 (9th Cir.1993) (forbidding initial fraud from being considered).[1]

**REVERSED AND REMANDED.**

---

1. We join in Judge Rymer's well-expressed concurrence, except only for the last paragraph. We seem to differ primarily as to the consideration the BIA must give to the effect of deportation on children as it arises in this case. In the majority's view the specific mention of children in 8

RYMER, Circuit Judge, concurring:

I concur because the BIA erroneously relied on Casem's original fraudulent entry to deny her waiver of deportation.

As we first stated in *Hernandez–Robledo v. INS*, 777 F.2d 536, 540 (9th Cir.1985), an alien's original mistake, illegal entry through fraud, may not be held against her in considering waiver of deportation.

> In its decision the BIA noted petitioner's lengthy residence and employment as favorable factors, but undercut that by noting that both were achieved illegally. The latter conclusion is improper since the inquiry is not into the illegality of his or her presence in the United States but the reasons that an alien should be allowed to stay, despite the illegality.

*Id.* at 540–41. Likewise in *Braun v. INS*, 992 F.2d 1016 (9th Cir.1993), the BIA impermissibly gave weight to the original fraud when it stated that the alien "not only entered into a fraudulent marriage upon his initial entry, but he pursued an elaborate plan by which he eventually brought his first wife to the United States sometime after he had committed the fraud by which he obtained his own status." *Id.* at 1020 (internal quotation marks omitted).

The BIA's opinion suffers the same infirmity in this case. It adopts the Administrative Law Judge's conclusion that Casem achieved one of the equities in her favor—her United States citizen son—through the original fraudulent entry. In addition, the BIA states that "the timing of the [wedding] ceremony and the filing of the visa petition indicate that her purpose was to obtain immigration benefits for her husband *based upon her own fraudulently obtained visa.*" These statements indicate that the BIA relied on Casem's original fraudulent entry. As this runs afoul of *Braun,* we must remand for the BIA to consider the equities, including Casem's citizen child, afresh, without regard to the initial fraud.

U.S.C. § 1254(a) surely does not mandate that the BIA may not also consider children along with other factors when considering a waiver of deportation under 8 U.S.C. § 1254(a)(1)(H).

Casem raised the issue of hardship to her child in this appeal, and that point serves as an alter-

As Casem's appeal is clearly controlled by *Braun,* it is unnecessary to decide, as the majority does, that the BIA must consider the effect of deportation on children when considering an 8 U.S.C. § 1251(a)(1)(H) waiver of deportation. That statute, unlike 8 U.S.C. § 1254(a), says nothing about the effects of deportation on children. Though the delay here is atrocious, and the result reached by the majority may seem felicitous, neither justifies reading into § 1251(a)(1)(H) an implicit requirement that the Congress itself chose not to impose.

nate basis for the remand in addition to the issue explained by Judge Rymer. Our holding in this respect should be useful to the Immigration and Naturalization Service when it re-examines the case.