**Ana Cristina DELMUNDO, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 93–70780.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1994.

Decided Dec. 20, 1994.

---

Robert O. Wells, Jr., Mikkelborg, Broz, Wells & Fryer, Seattle, WA, for petitioner.

Karen Ann Hunold, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: LAY,* TROTT, and T.G. NELSON, Circuit Judges.

TROTT, Circuit Judge:

Ana Cristina Delmundo was found to have fraudulently entered the United States and was ordered by an immigration judge to be involuntarily deported. Delmundo appealed the decision to the Board of Immigration Appeals ("BIA") and moved to reopen her deportation proceedings to consider her application for waiver of deportation under § 212(i) of the Immigration and Nationality Act.[1] The BIA denied Delmundo's motion to reopen on the basis that she "did not merit a favorable exercise of discretion." The BIA affirmed the decision of the immigration judge but reversed the order of involuntary deportation and granted Delmundo voluntary deportation.

We hold that the BIA erred by considering improper factors weighing against Delmundo in determining whether she warranted discretionary relief pursuant to § 212(i). In addition, we hold that the BIA failed to adequately consider the hardship Delmundo's children would experience if she were deported. Therefore, we reverse and remand to the BIA for further proceedings consistent with this opinion.

## I

Delmundo, a native and citizen of the Philippines, entered the United States as a non-immigrant visitor on November 5, 1982, using a false identity established by the use of a false birth certificate and a false death certificate of an alleged previous spouse. Delmundo later used this false identity to secure permanent resident status, as well as to obtain a social security card, driver's license, and voter's registration card.

On March 15, 1985, Delmundo married Gerardo M. Delmundo, a United States citizen. At the time of this appeal, Ana and Gerardo are still married and have two daughters, eight and two years old.[2]

In November, 1988, Delmundo again used her false identity to submit an application to file a petition for naturalization. Apparently as a result of this application, on April 19, 1989, Delmundo received an Order to Show Cause why she should not be deported for using false documents to obtain a non-immigrant visa and permanent resident status. Apparently her true identity had been uncovered. On April 20, Delmundo appeared before the immigration judge and denied any use of false documents or a false identity to obtain a non-immigrant visa, claiming still not to be who she was. On May 19, one month after her appearance before the immigration judge, Delmundo submitted an affidavit to the immigration court admitting the allegations in the Order to Show Cause.

## II

On appeal to this Court, Delmundo's sole contention is that the BIA erred in denying her motion to reopen deportation proceedings to consider her application for waiver of excludability pursuant to § 212(i). Section 212(i) provides in pertinent part:

---

\* The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. Section 212(i) of the Immigration and Nationality Act is codified at 8 U.S.C. § 1182(i). For the sake of clarity, this section will hereinafter be referred to as § 212(i).

2. Delmundo's second child was born on July 23, 1992, after Delmundo submitted her motion to reopen deportation proceedings to the BIA. The BIA's decision suggests they had no knowledge of the second child.

(i) Admission of immigrant excludable for fraud or willful misrepresentation of material fact

The Attorney General may, in his discretion, waive application of clause (i) of subsection (a)(6)(C) of this section—

(1) in the case of an immigrant who is the spouse, parent, or son or daughter of a United States citizen or of an immigrant lawfully admitted for permanent residence....

8 U.S.C. § 1182(i). Subsection (a)(6)(C), to which this section refers, provides for the excludability of aliens who gain entry into the United States by fraud or willful misrepresentation. 8 U.S.C. § 1182(a)(6)(C).

■ The BIA's denial of a motion to reopen deportation proceedings is reviewed for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, ——, 112 S.Ct. 719, 725, 116 L.Ed.2d 823 (1992). The BIA's refusal to exercise its discretion to grant a waiver of excludability should not be disturbed unless it acted arbitrarily, irrationally or contrary to law. *Braun v. INS*, 992 F.2d 1016, 1019 (9th Cir.1993).

### III

■ Delmundo contends the BIA erred in denying the motion to reopen on the grounds that (1) she established a *prima facie* case that she was eligible for relief under § 212(i), and (2) that she had new evidence which had previously been unavailable. The new evidence consisted of an approved visa petition and an application for adjustment of status. Delmundo's position, however, is not supported by the law.

In *INS v. Abudu*, the United States Supreme Court discussed both the grounds on which the BIA can deny a motion to reopen and the standard by which that decision can be reviewed. 485 U.S. 94, 104–05, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988). The Court stated:

There are at least three independent grounds on which the BIA may deny a motion to reopen. First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought.... Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence.... Third, in cases in which the ultimate granted relief is discretionary (asylum, suspension of deportation, and adjustment of status, but not withholding of deportation[3]), the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable expectation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief. We have consistently held that denials on this third ground are subject to an abuse of discretion standard.

*Id.* at 104–05, 108 S.Ct. at 912 (citations omitted). *See also INS v. Doherty*, 502 U.S. 314, ——, 112 S.Ct. 719, 725, 116 L.Ed.2d 823 (1992) ("When denial of a motion to reopen is based on the first two of these three grounds, abuse of discretion is the proper standard of review.")

In the instant case, the BIA clearly based its denial of Delmundo's motion to reopen on the third ground. The BIA stated "[b]ecause we find that the respondent does not merit a favorable exercise of discretion, the motion to reopen will be denied."

It is irrelevant whether or not Delmundo established a *prima facie* case of eligibility or submitted new material facts. The BIA was within its discretion to "leap ahead ... over those two threshold concerns" and simply determine that, even if they were established, Delmundo would not merit a discretionary grant of relief.

### IV

■ Delmundo next contends the BIA erred by considering improper factors in denying her discretionary relief. The BIA expressly stated the factors weighing against granting Delmundo discretionary relief as follows:

The following actions constitute the basis for the respondent's inadmissibility. After the respondent's application for a

---

**3.** The Supreme Court later expanded the discretion of the BIA to include claims for withholding of deportation. *INS v. Doherty*, 502 U.S. 314, ——, 112 S.Ct. 719, 725, 116 L.Ed.2d 823 (1992).

nonimmigrant visa was denied, she re-applied using a fraudulent birth certificate and fraudulent death certificate pertaining to a fictitious previous spouse. She also claimed two children from her fictitious previous marriage. These acts will not be considered in the exercise of discretion in accordance with the holdings in *Matter of Alonzo* and *Matter of Da Silva*. However, after entering the United States, the respondent maintained her fraudulent identity and perpetrated further fraud upon the government.

The respondent committed fraud with the Social Security Administration in obtaining a social security card. She obtained a driver's license and a voter's identification card using her fictitious identity. She claimed her false identity on two marriage licenses and to the Service in visa petitions based on her current and previous marriages. The respondent also prepared and filed with the Service an unsworn application to file petition for naturalization (Form N–400), listing the fictitious spouse under previous marriages. The interview on this application was cancelled in 1990 when she was placed in deportation proceedings.

In addition, the respondent lied to her attorney about her true identity and continued to misrepresent her identity at the commencement of her deportation proceedings, until finally admitting her true identity and past pattern of deception. Delmundo argues that each of these instances of fraud or misrepresentation "are interwoven with the initial creation of the false identity for which petitioner requests forgiveness pursuant to § 212(i)," and therefore, are inappropriate factors for consideration in determining whether she should merit discretionary relief.

■ The law in this area is clear. The BIA has held that when considering § 212(i),

fraud and misrepresentation used to obtain a visa should not be held as an adverse factor. *Matter of Alonzo*, 17 I & N Dec. 292 (Comm'r 1979). *See also Braun*, 992 F.2d at 1020 (applying the same principle to applications for waiver under § 241(f)[4]). The rationale for excluding the initial fraud is that "this is the action for which they seek to be forgiven." *Matter of Alonzo*, 17 I & N Dec. at 294. As we have stated:

> If ... immigration officials were permitted to rely on the initial fraud as a basis for denying the waiver in the exercise of discretion, a waiver could theoretically be denied in every case arising under § 241(f); the condition that made the alien eligible for relief would be the very condition which would serve as the justification for denying relief. Such a result was surely not contemplated by Congress.

*Braun*, 992 F.2d at 1020.

■ We must determine whether the factors relied on by the BIA were part of the initial fraud perpetrated by Delmundo to gain entry into the country. The BIA abuses its discretion when it considers an irrelevant factor when determining whether to grant a discretionary waiver of excludability. *Braun*, 992 F.2d at 1019. On this issue, the case of law of this circuit is instructive.

In *Braun v. INS*, Braun was a citizen of Mexico who entered the United States and married Duarte, an United States citizen for the sole purpose of obtaining an immigrant visa. *Id.* at 1017. After he entered the country as a lawful permanent resident, he divorced Duarte and married Hernandez–Martinez, a Mexican citizen, who legally entered the country on a border crossing card. *Id.* After Braun applied for citizenship it was determined that he had actually married Hernandez–Martinez in Mexico prior to his marriage to Duarte and also that he had a

---

**4.** Section 241(f) is codified at 8 U.S.C. § 1251(a)(1)(H). For the sake of clarity, this section will hereinafter be referred to as § 241(f).

This court has noted that "[§ 212(i)] is similar to § 241(f) in that it provides for a discretionary waiver for an alien who entered the country fraudulently and who is the parent of a United States child, if the alien is otherwise admissible."

*Braun*, 992 F.2d at 1020. In fact, the wording of these two sections is virtually identical. Therefore, analysis of § 241(f) is instructive when considering § 212(i). For the purposes of this analysis, the two sections will be treated interchangeably insofar as they relate to the BIA's exercise of discretion in granting or denying relief pursuant to these sections.

child with Hernandez–Martinez prior to his marriage to Duarte. *Id.*

The BIA held that Braun did not merit a discretionary waiver of excludability under § 241(f) because "Braun had pursued an 'elaborate plan' to defraud the United States by which he eventually brought his first wife to the United States after his own fraudulent entry." *Id.* at 1018. This court reversed the decision of the BIA stating:

> In denying relief in the exercise of its discretion, the BIA stated that Braun "not only entered into a fraudulent marriage upon his initial entry, but he pursued an elaborate plan by which he eventually brought his first wife to the United States sometime after he had committed the fraud by which he obtained his own status." Thus, it is clear that the BIA gave considerable weight to Braun's initial fraudulent entry in denying a waiver in the exercise of discretion. This was erroneous.

*Id.* at 1020. The court observed that "Braun's alleged 'elaborate plan' to defraud the government boils down to nothing more than his fraudulent entry." *Id.* at 1021. The court came to this conclusion even though the only reason Hernandez–Martinez would be allowed to live in the United States was her marriage to Braun as a result of his fraudulently obtained permanent resident status.

In *Hernandez–Robledo v. INS*, Hernandez–Robledo gained entry to the United States by fraudulently obtaining a visa. 777 F.2d 536, 538 (9th Cir.1985). On his appeal for waiver of excludability under § 241(f), the BIA found he was statutorily eligible for relief, but refused to exercise its discretion in his favor. *Id.* at 540. "In its decision the BIA noted [Hernandez–Robledo's] lengthy residence and employment as favorable factors, but undercut that by noting that both were achieved illegally." *Id.* at 540–41. This court held that the BIA erred in considering that his residence and employment had been achieved illegally because "the inquiry is not into the illegality of his or her presence in the United States but the reasons that an alien should be allowed to stay, despite the illegality." *Id.* at 541.

Both of these cases were cited favorably by Judge Rymer in her concurring opinion in *Casem v. INS*, 8 F.3d 700, 704 (9th Cir.1993) (Rymer, J., concurring). Although not controlling, her comments are instructive. In that case, the BIA denied waiver of excludability to Casem. *Id.* (Rymer, J., concurring). Similarly to *Hernandez–Robledo*, the BIA noted that one of the factors weighing in Casem's favor—her United States citizen son—was achieved by virtue of the original fraudulent entry. *Id.* (Rymer, J., concurring). The BIA also stated that "the timing of the [wedding] ceremony and the filing of the visa petition indicate that her purpose was to obtain immigration benefits for her husband *based upon her own fraudulently obtained visa.*" *Id.* (Rymer, J., concurring). Judge Rymer believed these statements indicated the BIA considered Casem's initial fraudulent entry, and therefore, was in violation of the rule in *Braun.*[5] *Id.* (Rymer, J., concurring).

As in each of the above cases, Delmundo's misrepresentations in obtaining permanent resident status, a driver's license, a social security card, and a voter's identification card arise from her initial fraud in establishing a false identity when she first entered the country. As in *Hernandez–Robledo* where this court concluded that a person's residence and employment could not be held against them because they were made possible by an illegal entry, here also, Delmundo's misrepresentations made to obtain items necessary to live and work may not be held against her. To follow the BIA's distinction between initial and subsequent instances of fraud would severely impair the effectiveness of relief statutes such as §§ 212(i) and 241(f).

We conclude Delmundo's fraudulent acts in applying for permanent resident status and obtaining a driver's license, social security card, and voter's identification card were an extension of her initial fraudulent entry. The BIA improperly considered these acts in denying Delmundo discretionary waiver of excludability, and therefore, its decision must be reversed.

---

**5.** The majority joined in this part of Judge Rymer's concurrence. *Casem,* 8 F.3d at 703–04 n. 1.

■ Nevertheless, we reject Delmundo's contention that her fraud on the Immigration Court should also be excused as arising from her initial fraudulent entry. At the April 20 hearing, Delmundo denied applying for a non-immigrant visa under a false name and furnishing a false birth certificate. The record shows the immigration judge specifically inquired as to whether Delmundo fully understood the ramifications of continued denial of her true identity:

JUDGE TO MR. WELLS [Counsel for Delmundo]

Q. And Mr. Wells, are you completely aware of the significance of the denials of allegations 4, 5 and 9?

A. Yes, Your Honor.

Q. And is your client aware of the consequences and meaning of her denial of those three allegations?

A. I firmly believe that she is, Your Honor, we have discussed this on a number of occasions.

Even after Delmundo was confronted with her true identity, she persisted in foisting material misrepresentations on the court. This charade was not an act intertwined with the initial fraudulent entry which § 212(i) was intended to forgive, and to overlook this behavior would go far beyond the rationale and purpose of *Braun, Hernandez–Robledo,* and *Casem.* Therefore, we conclude Delmundo's fraud on the immigration court at the April 20 hearing was properly considered by the BIA in denying Delmundo discretionary relief and can be considered again on remand.

### V

■ Finally, Delmundo contends the BIA failed to consider factors weighing in her favor. Specifically, Delmundo argues that the BIA failed to consider her good moral character and the hardship to her United States citizen husband and two children.

"BIA discretionary denials must show that the BIA weighed both favorable and unfavorable factors." *Mattis v. INS,* 774 F.2d 965, 968 (9th Cir.1985). The BIA is required to "state its reasons and show proper consideration of all factors when weighing equities

and denying relief." *Id.* Furthermore, the BIA is not assumed to have "considered factors that it failed to mention in its decision." *Casem,* 8 F.3d at 702.

The BIA set forth, in one paragraph, the equities weighing in favor of Delmundo, stating:

The respondent has presented the following equities in support of her application for waiver. She has resided in the United States for over ten years. She has a United States citizen husband and 7–year–old citizen daughter. The respondent has a steady employment history and no criminal record. She submitted a *report by a clinical psychologist attesting to the hardship her family would undergo if she were deported* and several letters from family and persons in her community in support of her application for relief.

The respondent's immediate relative status is a "special and weighty equity." *Matter of Ibrahim,* 18 I & N Dec. 55 (BIA1981). We find that she has presented substantial equities in support of her application for waiver. However, we find these equities outweighed by her persistent pattern of fraud upon various agencies of the United States government.

(emphasis added).

As to Delmundo's contention that the BIA failed to consider her good moral character, the BIA clearly stated that it considered Delmundo's steady employment history and lack of any criminal record as well as the letters from family and persons in the community in support of her application. This treatment of facts relating to Delmundo's good moral character, albeit somewhat cursory, nevertheless indicates the BIA did consider them. Therefore, Delmundo's contention that the BIA failed to consider her good moral character is without merit.

■ The BIA's consideration of the hardships on Delmundo's family, however, is another matter entirely. This court has admonished the INS that in cases involving discretionary waiver of excludability for aliens who entered the country by fraud or misrepresentation, it must "appraise carefully the effect deportation would have on an

alien's children who are United States citizens." *Casem*, 8 F.3d at 703. We require the BIA to "consider the specific circumstances of citizen children and reach an express and considered conclusion as to the effect of those circumstances upon those children." *Cerillo–Perez v. INS*, 809 F.2d 1419, 1426 (9th Cir.1987).

In *Casem v. INS*, Casem, who was threatened with deportation to the Philippines, had a nine year old son who was a United States citizen. *Id.* 8 F.3d at 702. Her son had spent virtually his entire life in the United States. *Id.* The immigration judge denied waiver of deportation and the BIA dismissed Casem's appeal. *Id.*

This court reversed the decision of the BIA stating that "[t]he inquiry into family ties ... must not be limited to noting the benefits of living near one's immediate or extended family. The BIA also must examine the impact of 'untying' the family ties Congress sought to safeguard." *Id.* at 703. The court cited a long line of cases in support of the proposition that a close examination was especially important because Casem's son began attending school during the prolonged period of consideration by the BIA. *Id.*

Similarly, in the instant case, even though at the time the BIA filed its decision Delmundo's oldest daughter was seven years old and had presumably started school, the BIA's entire discussion of the hardships which she might encounter if her mother was deported was limited to a statement that Delmundo had a daughter and that it considered a psychologist's report "attesting to the hardships her family would undergo if she were deported." This treatment by the BIA falls short of the consideration of the "specific circumstances of citizen children" and the "express and considered conclusion as to the effect of those circumstances upon those children" that is required by this circuit. *Cerillo–Perez*, 809 F.2d at 1426. Therefore, we conclude the BIA failed to adequately consider the hardship Delmundo's deportation would cause to her family.

## VI

For the foregoing reasons, we reverse the decision of the BIA. On remand, the BIA may not consider Delmundo's use of a fraudulent identity in applying for permanent resident status or in obtaining a driver's license, social security card, and voter's identification in determining whether Delmundo is entitled to a discretionary waiver of excludability. However, the BIA may properly consider Delmundo's fraudulent denial of her true identity when she appeared before the immigration court in response to the Order to Show Cause. Finally, the BIA must "consider the specific circumstances of [Delmundo's] citizen children and reach an express and considered conclusion as to the effect of those circumstances upon those children." *Cerillo–Perez*, 809 F.2d at 1426.

REVERSED AND REMANDED.