**Nelson Omar DIAZ, Petitioner,**

v.

**Thomas J. SCHILTGEN, Respondent.**

**No. C 96–0758 FMS.**

United States District Court,
N.D. California.

April 15, 1996.

Gary L. Benton and Joakin E. Parker, Coudert Brothers, San Francisco, CA, for Nelson Omar Diaz.

Emily J. Kingston, U.S. Attorney's Office, San Francisco, CA, for Thomas Schiltgen, District Dir. INS.

## ORDER GRANTING PETITION FOR HABEAS CORPUS

FERN M. SMITH, District Judge.

Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking review of the Immigration and Naturalization Service ("INS") District Director's denial of petitioner's request for parole. Petitioner seeks parole pending his appeal before the Board of Immigration Appeals ("BIA") from the Immigration Judge's ("IJ") denial of his request for asylum. The issue before the Court is whether the District Director had facially legitimate and bona fide reasons for the denial of petitioner's request for parole.

### Background

Petitioner is a native and citizen of El Salvador. He has resided in the United States since 1983, when he apparently entered the country illegally. He is married to a permanent lawful United States resident and has two children who are United States citizens.

On January 15, 1992, petitioner was granted Temporary Protected Status pursuant to 8 U.S.C. § 1254(a), which was later changed to Deferred Enforced Departure to allow him to remain in the country. On March 16, 1993, petitioner requested that the INS place him in deportation proceedings so that he could apply for suspension of deportation. On July 30, 1993, the INS issued an Order to Show Cause to the petitioner with respect to his deportation, and on May 2, 1994, petitioner filed an application for suspension of deportation.

In July 1994, prior to the adjudication of petitioner's application for suspension of deportation, petitioner applied for advance parole for the purpose of returning to El Salvador to visit his ill mother. The INS requested that the petitioner provide additional information, which petitioner was unable to obtain. Petitioner nevertheless went to El Salvador to visit his mother, who died the day he arrived.

On August 11, 1994, after petitioner was unable to secure permission to return to the United States, he attempted to re-enter the United States at the San Francisco International Airport ("SFO") by presenting a false passport. Petitioner was detained pursuant to 8 U.S.C. § 1225(b); he was placed into custody and exclusion proceedings. Petitioner remains in detention to date, and he is currently detained in the Santa Rita jail in Dublin, California. The length of his detention now exceeds twenty months.

Shortly after petitioner's arrival at SFO, the INS served him with a Form I–122, which alleged that he was excludable pursuant to 8 U.S.C. §§ 1182(a)(6)(C) and 1182(a)(7)(A)(i)(I) (attempted entry with false or insufficient documentation). Petitioner timely filed with the INS a filed a Request for Asylum in the United States.

On January 31, 1995, petitioner appeared before the IJ for an asylum hearing. The IJ orally denied petitioner's asylum application. Petitioner appealed the IJ's decision; this appeal remains pending before the BIA.

On March 2, 1995, petitioner made a written application to respondent for parole, as provided by 8 U.S.C. § 1182(d)(5) and 8 C.F.R. § 212.5. After several months, respondent denied petitioner's parole application in June 22, 1995. In the denial letter, respondent stated that petitioner failed to meet his burden of showing that his parole would be strictly in the public interest. The District Director also stated that the denial was made as a matter of his discretion, which was exercised on the grounds that petitioner (1) attempted entry into the United States by fraud; (2) lacked close family relatives who could file a visa petition on his behalf; (3) was not a juvenile; and (4) did not have any emergent medical problems. Respondent also noted in that letter that the "public ... has a strong interest in discouraging abuse of our immigration laws.... [I]t is not in the public interest to permit facile circumvention of the procedures governing lawful immigration into this country."

On November 27, 1995, the INS granted petitioner's wife, Maria Diaz, suspension of deportation. Ms. Diaz filed a Petition for

Alien Relative on January 2, 1996 on petitioner's behalf; this petition remains pending. If the petition is granted, it will result in petitioner being admitted to the United States.

Based on this change of circumstances and the continued delay of his BIA appeal, on January 18, 1996 petitioner filed a renewed request for parole. The District Director denied petitioner's request by letter on February 12, 1996, finding again that petitioner had failed to meet his burden of showing that his parole would be strictly in the public interest. The letter is substantially identical to the first denial letter, except for the reference to the absence of close family members who could file a visa petition on petitioner's behalf, which was changed to read: "[A]lthough [petitioner] now can benefit by a visa petition filed on his behalf by a close family member, he still could not warrant an early priority date on his petition to receive benefit at this time."

By this habeas petition, petitioner seeks judicial review of this final parole denial. Petitioner has exhausted all administrative remedies.

### Discussion

### I. Legal Standards

#### A. Standard of Review

Courts in the Ninth Circuit have employed two different standards for reviewing a denial of request for parole. In *Mason v. Brooks*, 862 F.2d 190, 194 (9th Cir.1988), the Ninth Circuit adopted an extremely deferential standard, stating that a "rejection of parole will be upheld if the agency advanced a facially legitimate and bona fide reason for the denial." The Ninth Circuit has since reviewed denials of parole for an abuse of discretion, however, which is a relatively less deferential standard. *See Alvarez–Mendez v. Stock*, 941 F.2d 956, 963 (9th Cir.1991), *cert. denied*, 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992). Because the distinction between the two standards is elusive, however, *see Marczak v. Greene*, 971 F.2d 510 (10th Cir.1992) (noting that results under the two standards are often the same and that the Supreme Court has conflated the two), and because the Court finds for the reasons set

forth below that the writ should be granted even under the more "deferential" standard, the Court examines the District Director's denial of petitioner's request for parole to determine whether there was a "facially legitimate and bona fide reason" for the denial.

#### B. Parole

An alien in detention seeking admission to the United States may be released from INS detention "for emergent reasons or reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5). According to INS regulations:

> The parole of aliens within the following groups would generally come within the category of aliens for whom the granting of the parole exception would be "strictly in the public interest," provided that the aliens present neither a security risk nor a risk of absconding:
>
> .     .     .     .     .
>
> (iii) Aliens who have close family relatives in the United States (parents, spouse, children ... who are United States citizens or lawful permanent residents) who are eligible to file, and have filed, a visa petition on behalf of the detainee;
>
> .     .     .     .     .
>
> (v) Aliens whose continued detention is not in the public interest....

8 C.F.R. § 212.5(a)(2). This section applies to aliens who have attempted entry into the United States by fraud or without proper documentation. *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 235.3(b).

█ The parole statute establishes a two-step analysis for determining whether an alien should be paroled. "First, the District Director should determine whether the applicant's release would be in the public interest, whether for one of the enumerated reasons, or for some other reason. Second, even if the applicant would otherwise qualify, the District Director should not parole the applicant if he or she is a flight or security risk." *Gutierrez v. Ilchert*, 702 F.Supp. 787, 790 (N.D.Cal.1988). The District Director is required to "make individualized determinations of parole." *Jean v. Nelson*, 472 U.S. 846, 857, 105 S.Ct. 2992, 2998, 86 L.Ed.2d 664

(1985). Thus, the District Director may not "decide[ ] parole applications on the basis of broad, non-individualized policies." *Marczak*, 971 F.2d at 515.

■ Respondent contends that parole is a narrow exception to the general rule that detention is mandated for excludable aliens. Respondent points to the legislative history of the parole statute to illustrate the congressional intent that parole be used in a restrictive manner. As several courts have noted however, the parole statute on its face displays no preference for either detention or parole, leaving the matter instead to the discretion of the Attorney General; because the statute is unambiguous, there is no need to resort to an analysis of its legislative history. *E.g.*, *Marczak*, 971 F.2d at 513; *see Gutierrez*, 702 F.Supp. at 793 (after reviewing legislative history cited by respondent here, concluding that District Director's denial of appeal should be analyzed pursuant to terms of parole statute); *see also Leng May Ma v. Barber*, 357 U.S. 185, 190, 78 S.Ct. 1072, 1075, 2 L.Ed.2d 1246 (1958) (Supreme Court observing six years after passage of parole statute that "[p]hysical detention of aliens is now the exception, not the rule."). Furthermore, the INS regulations themselves do not incorporate such a presumption against parole. *See Marczak*, 971 F.2d at 515.

As such, the Court rejects the restrictive gloss urged by respondent and analyzes instead whether the District Director exercised his discretion in accordance with the terms of the applicable statutes and regulations and whether he advanced facially legitimate and bona fide reasons for the denial of parole thereunder.

## II. Analysis

### A. Public Interest

■ Petitioner's wife is entitled to, and did, file a visa petition on petitioner's behalf. Accordingly, petitioner is within the categories of detainees whose parole, according to INS regulations, is presumptively in the public interest. *See* 8 C.F.R. § 212.5(a)(2).

Petitioner raised this issue in his second parole request, but the District Director responded only by noting that petitioner is not entitled to a "priority date" under his wife's petition. Respondent contends that, in fact, petitioner will not be eligible for entry into the United States under his wife's petition for three to four years. The imminence of petitioner's entry to the United States on his wife's petition, however, is irrelevant to the analysis here. The INS regulation makes no distinction between detainees whose family member's visa petitions will be granted quickly and those whose petitions will take years to process.[1] As such, the Court concludes that, by raising the issue of his wife's petition on his behalf, petitioner thereby established that his parole was in the public interest.

■ The District Director advanced no facially legitimate or bona fide reasons to undermine this presumption. The District Director denied petitioner's parole request on the grounds that petitioner "attempted entry into the United States by fraud" and that "the public ... has a strong interest in discouraging abuse of our immigration laws." These reasons for denial are facially illegitimate because they are inconsistent with the INS's own regulations, which specifically make parole available to aliens who have attempted entry into the United States by fraud. *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 235.3(b); *see also Sullivan v. Everhart*, 494 U.S. 83, 89, 110 S.Ct. 960, 964–65, 108 L.Ed.2d 72 (1990) (agency must give effect to expressed intent of Congress); *United States v. Powell*, 6 F.3d 611, 614 (9th Cir.1993) (statute must not be interpreted to be internally contradictory or in a way that renders one section meaningless). Further, the interest in deterring violations of the immigra-

---

1. Respondent seems to admit as much in its brief, noting that "it is true that petitioner's wife has filed a visa petition on his behalf, thereby raising the presumption that his parole would be in the public interest." Respondent goes on, however, to address petitioner's flight risk, which will be addressed in the following section. Because the two considerations—presumptive public interest and flight risk—are separate inquiries, *see Gutierrez*, 702 F.Supp. at 790 (describing "two-step analysis")—respondent may not sidestep the first issue by launching into an examination of the second.

tion laws is not an individualized reason for denying parole, which is required in this context, see Jean, 472 U.S. at 857, 105 S.Ct. at 2998; Marczak, 971 F.2d at 515. Indeed, under the District Director's circular analysis, parole would never be granted. The fact that an alien is being detained means that he or she has committed some unlawful act, and under the District Director's reasoning that very act mandates a denial of parole in every instance in the interest of deterring and punishing the unlawful conduct. This "Catch–22" conclusion is mandated neither by the parole statute and accompanying regulations or by existing caselaw.

For the reasons set forth above, the Court finds that petitioner's parole was presumptively in the public interest, and that the District Director did not advance any facially legitimate or bona fide reason for the denial of petitioner's parole.

### B. Flight or Security Risk

■ Even if an alien's parole is otherwise in the public interest, it should be denied if the alien is a security or flight risk. The District Director did not suggest in his denial of petitioner's second request for parole that petitioner posed a security or flight risk. In the denial of petitioner's first request for parole, however, the District Director did note that petitioner's deliberate violations of the immigration laws did not "lead [him] to believe that [petitioner] would not abscond." The fact that petitioner entered the country illegally, however, "has little or no bearing on [the flight risk] issue." Gutierrez, 702 F.Supp. at 794. Once again, such an explanation for denial of parole is circular, in that the very facts bringing an alien within the parole statute lead to a denial of parole in every instance based on a risk of flight. Cf. Hamaya v. McElroy, 797 F.Supp. 186, 192 (E.D.N.Y.1992) (INS's use of likely excludability to conclusively determine risk of absconding in making parole determination creates improper "administrative Catch–22" in which no alien may ever qualify for parole); Delmundo v. INS, 43 F.3d 436, 440 (9th Cir.1994) (INS may not consider initial fraud in the context of waiver of excludability, because waiver could then theoretically be denied in every case; "the condition that made the alien eligible for relief would be the very condition which would serve as the justification for denying relief. Such a result was surely not contemplated by Congress.").

Additionally, the fact that the District Director denied petitioner's parole for the purpose of deterrence necessarily means that the finding of flight risk was not based on any individualized facts; rather, his denial implies that all detainees who have previously violated the immigration laws would be intelligible for parole because they are likely to abscond.

The extent to which the District Director's finding of flight risk was based on broad policy concerns rather than individualized consideration of petitioner's case is made clear when petitioner's circumstances are analyzed. Petitioner's wife and children live in the Bay Area, and he has been a working member of society for many years. Additionally, the prospect that either his wife's petition on his behalf or his asylum claim will be granted provide additional incentive to keep petitioner from absconding. See Gutierrez, 702 F.Supp. at 794 (finding no flight risk where there was substantial period of residence, significant local ties, and likelihood of eventual admission).

For the foregoing reasons, the Court finds that any finding of flight risk by the District Director was not a facially legitimate or bona fide reason for denial of petitioner's request for parole.

### Conclusion

Respondent failed to provide facially legitimate or bona fide reasons for denying petitioner's request for parole. Petitioner's petition for writ of habeas corpus is therefore GRANTED. Petitioner shall be released forthwith on parole pursuant to 8 U.S.C. § 1182(d)(5), pending a decision from the BIA on his appeal.

SO ORDERED.