65 F.3d 174
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Juanito GUINTU, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70451.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 7, 1995.
Decided Aug. 24, 1995.
 
 Before: HALL, WIGGINS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Juanito Guintu appeals the BIA's reversal of the Immigration Judge's decision to grant Mr. Guintu a discretionary waiver of deportation under 8 U.S.C. Sec. 1251(f). Because there was no substantial evidence of fraud presented, separable from the fraudulent use of a false name and papers when Mr. Guintu entered the country initially, there was no substantial evidence on the record as a whole that could justify the BIA's decision under controlling precedent in this circuit.
 
 
 3
 In 1979, when he was about nineteen, Mr. Guintu paid about $1000 U.S. dollars for false papers to get in to the United States. The papers he obtained were in the name of Cecilio Riodil. In order to perpetuate the disguise used to gain entry to the United States, Mr. Guintu continued to use the name Riodil. He used the name Riodil when he applied in 1983 for a new alien registration card from the INS, in 1983, 1984 and 1985, when applying for the Alaska Permanent Fund Dividend, and on his federal income tax forms. When Mr. Guintu's wife became pregnant with their son, they wanted their son to have his true name, so they divorced and remarried under Mr. Guintu's true name. The divorce was a clumsy means of accomplishing a name change; the marriage remained intact. Now at age 34, Mr. Guintu faces deportation because his attempt to begin using his true name again, on a petition for naturalization in the name Guintu, exposed his use of a false name when he entered this country years ago.
 
 
 4
 Our decisions in four cases require that in exercising its discretion whether to waive deportation under 8 U.S.C. Sec. 1251(f), the initial fraud on entry, and fraud arising from that initial fraud, must be disregarded. The initial fraud and its interwoven sequelae make the alien deportable, but under our precedents are not among the equities to be weighed in deciding whether to deport a deportable alien who is in a category for which waiver is allowed. In Delmundo v. INS, 43 F.3d 436 (9th Cir.1994), we held that the alien's obtaining a driver's license, social security card and voter registration card in a false name all "arise from her initial fraud in establishing a false identity when she first entered the country," id. at 441, so could not be held against her on the waiver of deportation issue. In Braun v. INS, 992 F.2d 1016 (9th Cir.1993), we reversed a denial of waiver of deportation, because the subsequent fraud "boils down to nothing more than his fraudulent entry," id. at 1021, which could not be considered as an adverse factor in a waiver of deportation proceeding. In Yang v. INS, --- F.3d ---- (9th Cir.1995), the subsequent frauds were "inextricably intertwined" with the initial fraudulent entry, so we held that the subsequent frauds could not properly be considered. In Alquisalas v. INS, --- F.3d ---- (9th Cir.1995), we concluded that without en banc reconsideration, we were bound by Delmundo, Braun, and Yang to reverse the INS decision where frauds not separable from the initial entry fraud were considered by the BIA.
 
 
 5
 The only act arguably separate from the fraud at the time of initial entry which the BIA considered was Mr. Guintu's applications, in 1984-1986, for Alaska Permanent Fund dividends. This program distributed to all residents of Alaska, even felons in prison, pro rata shares of the earnings thrown off by savings from royalties on oil extracted from Alaska state lands. This was not a welfare program or a program limited to a class of residents. The statute provided for distribution of the money to any "state resident" who was "physically present" in Alaska for at least 24 months. AS 43.23.005(a)(1), (2).
 
 
 6
 The BIA decision says that Mr. Guintu obtained his permanent fund dividends by falsely representing that he was a resident alien.
 
 
 7
 Although his two fraudulent entries would be waived by a 241(f) waiver, he engaged in an additional 7-year period of fraud which would preclude such a grant in the exercise of discretion. He continued to use a fraudulent identity for almost 7 years, obtaining state funds to which he was not entitled in that name by falsely stating that he was a resident alien, and entering into a marriage in that name.
 
 
 8
 The evidence in the record does not support this characterization. The Alaska permanent fund application form did not ask whether the applicant was a legal resident alien. It says that to be eligible, "you must be present in the state and intend to remain permanently." Mr. Guintu certified under penalty of perjury that he was and intended to remain an Alaska resident under this definition. His physical presence in Alaska, and his intention and desire to remain in Alaska permanently, have not been put at issue.
 
 
 9
 The only material on the form which furnishes any basis for the BIA's characterization of fraud is that the "adult's status" box on the form includes a line, which Mr. Guintu checked, saying that he was an "Alaska resident alien" and giving his alien registration number. Mr. Guintu was in fact an Alaska resident alien, but under the false name of Riodil. The state administrative agency in charge of permanent fund enforcement had issued a regulation that "[a]n alien with resident alien status ... is eligible to receive a permanent fund dividend." 15 AAC 23.615(d). The Alaska Supreme Court held, one judge dissenting, some years after Mr. Guintu obtained his permanent fund dividends, that the regulation was consistent with the statute. State Dept. Revenue v. Cosio, 858 P.2d 621 (Alaska 1993).
 
 
 10
 We conclude that Mr. Guintu's application for the permanent fund dividends could not properly be treated as a separable fraud, for two reasons. First, he did not demonstrably commit any fraud by applying. The application form which he signed defined him as an Alaska resident, and the permanent fund awarded dividends to all persons physically present in the state, much as a dividend on corporate stock goes to all shareholders regardless of their legal status in other respects. Second, the only fraudulent aspect of his application for a permanent fund dividend was his continued use of the false identity he had assumed on his initial entry into the United States.
 
 
 11
 Without considering Mr. Guintu's continued use of the false name of Riodil, and without considering Mr. Guintu's permanent fund applications as separable fraudulent conduct, there was no evidence whatsoever which could be properly weighed against Mr. Guintu's equities in considering discretionary relief from deportation. Congress provided for discretionary waiver of deportation despite willful fraudulent entry, at 8 U.S.C. Sec. 1251(f). It is hard to imagine a case more likely to be what Congress had in mind than a person who has married, had a child, worked productively in a restaurant, paid taxes, avoided any criminal involvement, bought a house, and lived an upstanding life as an American for sixteen years after his entry, with no subsequent fraud separable from his use of false papers to gain entry. On this record, denial of waiver was an abuse of discretion. Under Braun, 992 F.2d at 1021, the BIA determination is therefore reversed, and the case is remanded with direction to grant the waiver.
 
 
 12
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3