**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALI MOHAMMED EL-ALI,
Petitioner-Appellant,

v.

No. 95-1013

WILLIAM J. CARROLL, District
Director, Immigration and
Naturalization Service,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-94-844-A)

Argued: March 5, 1996

Decided: April 22, 1996

Before HALL, WILKINS, and WILLIAMS, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion. Judge
Hall wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** Michael Edward McKenzie, Arlington, Virginia, for
Appellant. Linda A. Dominguez, General Attorney, UNITED
STATES IMMIGRATION & NATURALIZATION SERVICE,
Arlington, Virginia, for Appellee. **ON BRIEF:**  Helen F. Fahey,
United States Attorney, Rachel C. Ballow, Assistant United States
Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner Ali El-Ali, a native of Qatar, was denied naturalization by the Immigration and Naturalization Service (INS) on two grounds: (1) the Washington, D.C., district office, where El-Ali applied for naturalization, lacked jurisdiction to consider his petition because he could not establish that he resided within that district for at least three months preceding June 20, 1993, the date he filed his petition, <u>see</u> 8 U.S.C.A. § 1430(a) (West Supp. 1995); and (2) El-Ali lacked good moral character, a requirement for naturalization, <u>see</u> 8 U.S.C.A. § 1101(f) (West 1970 & Supp. 1995); 8 C.F.R.§ 316.10(b)(3) (1995). El-Ali sought review of the denial of his petition in the district court. On cross-motions for summary judgment, the district court granted the INS's motion, holding that El-Ali was ineligible for naturalization. El-Ali appeals, and we vacate and remand for further proceedings consistent with this opinion.

I.

In December 1988, El-Ali entered the United States as a nonimmigrant government employee of the Embassy of Qatar, located in Virginia. At El-Ali's request, the embassy issued a generic letter addressed "To Whom It May Concern" stating that El-Ali was employed by the embassy and was entitled to an exemption from payment of United States income tax; relying on this letter, El-Ali filed no tax return for 1990. Also in 1990, El-Ali married a United States citizen, thereby adjusting his citizenship status to that of lawful permanent resident alien, <u>see</u> 8 U.S.C.A. § 1255 (West Supp. 1995).

In 1991, El-Ali purchased a grocery store in Youngstown, Ohio, where his in-laws resided. According to El-Ali, he believed that this purchase altered his tax-exempt status, so he consulted Toby Scharf, a tax preparer. Despite the fact that El-Ali informed Scharf that he

2

was a resident of Virginia, Scharf, with El-Ali's knowledge, used El-Ali's in-laws' Ohio address in preparing El-Ali's Ohio and federal tax returns for 1991 and 1992. Notably, El-Ali represented that he was a resident of Ohio on his Ohio state tax return and represented on his federal tax return that he was a grocer, despite the fact that he continued to work at the embassy in Virginia. Also, El-Ali did not report his embassy income on any of the returns.

In June 1993, El-Ali filed a naturalization petition. In connection with proving his state of residency, El-Ali produced a driver's license issued by the Commonwealth of Virginia, reciting that he was a resident of Falls Church, Virginia. Despite claiming continuous residency in Virginia since 1988, residing in Virginia, and possessing a Virginia driver's license, El-Ali also produced his Ohio and federal 1991 and 1992 tax returns, which indicated that he and his wife were residents of Ohio. On the Ohio tax return, El-Ali specifically chose the option that he and his wife were full-time "residents" of Ohio, even though the return provided for "resident," "nonresident," and "part-year resi-dent" status. El-Ali does not dispute that he did not report any income earned in Virginia on his returns, nor does he dispute that he did not file a Virginia tax return at any material time, even though now he asserts that he is and has been a resident of Virginia.

The INS denied El-Ali's petition for naturalization, premising its denial on two reasons. First, given El-Ali's conflicting information concerning his residence, the INS district office in Washington, D.C., concluded that it lacked jurisdiction to consider the petition because El-Ali could not establish that he resided within that district, i.e., Vir-ginia, for at least three months preceding the date of filing his peti-tion, see 8 U.S.C.A. § 1430(a). Second, the INS concluded that El-Ali lacked good moral character or committed unlawful acts or both because he failed to report income from his employment at the Qata-ran Embassy and he represented that he resided in Ohio on his 1991 and 1992 Ohio and federal tax returns, even though he stated in his petition for naturalization that he had resided continuously in Virginia since 1988. See 8 U.S.C.A. § 1101(f); 8 C.F.R. § 316.10(b)(3). According to the INS, El-Ali violated 26 U.S.C.A.§ 7206(1) (West 1989), which provides that furnishing false information on a federal tax return is a criminal offense.

3

El-Ali sought review of the denial of his petition in the district court. The gravamen of his argument was that although he admitted that his Ohio and federal tax returns incorrectly represented that he resided in Ohio, he did not <u>willfully</u> provide false information on his tax returns. According to El-Ali, he lacked familiarity with federal tax law and thus could not be faulted for his misrepresentations. In the district court, the INS argued that El-Ali was properly denied naturalization pursuant § 1101(f) as lacking good moral character because the 1991 and 1992 Ohio and federal tax returns provided that he was a resident of Ohio, yet in his petition for naturalization, he claimed he was a resident of Virginia. The INS, however, did not raise the issue of El-Ali's failure to report his embassy income. Alternatively, the INS posited that if El-Ali were a resident of Ohio, despite claiming Virginia residency, the Washington, D.C., district office had no jurisdiction to determine naturalization for a resident of Ohio. Thus, because El-Ali's 1992 tax return, dated March 15, 1993, stated that he resided in Ohio, he was not subject to the jurisdiction of the Washington, D.C., district office. Also alternatively, the INS contended that if El-Ali were a resident of both Virginia and Ohio, he could not be naturalized in the Washington, D.C., office because federal law provides that if an applicant seeking naturalization claims multiple states of residence, for purposes of naturalization, his state of residence will be deemed to be the one claimed on his federal tax return, see 8 C.F.R. § 316.5(b)(4) (1995), and El-Ali's federal tax return represented that he resided in Ohio.

The district court granted the INS's motion for summary judgment, agreeing with the INS that El-Ali lacked good moral character under 8 U.S.C.A. § 1101(f). The district court specifically recognized that El-Ali's tax liability was not at issue and held that his claimed unfamiliarity with tax law was unavailing. The district court explained that knowing one's residence "is not an obscure tax issue" and does not require knowledge of the tax laws. (J.A. at 193-94.) El-Ali unsuccessfully moved the district court for reconsideration and subsequently appealed. The INS relies only on El-Ali's lack of good moral character for denying naturalization and does not raise any of the alternative grounds on appeal.

II.

Federal Rule of Civil Procedure 56(c) requires that the district court enter judgment against a party who, "after adequate time for dis-

4

covery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To prevail on a motion for summary judgment, a party must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). In determining whether a genuine issue of material fact has been raised, we must construe all facts and reasonable inferences to be drawn therefrom in favor of El-Ali. See id. at 255. If, however, the evidence "is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. Id. at 252. Successive courts freely review a grant of summary judgment. See Harleysville Mut. Ins. v. Packer , 60 F.3d 1116, 1120 (4th Cir. 1995).

El-Ali advances the same contention to us that he urged on the district court. Specifically, he contends that he did not willfully provide false information on his tax returns by asserting that he resided in Ohio when he actually resided in Virginia. El-Ali contends that the misrepresentations on his 1991 and 1992 Ohio and federal tax returns were not willful; therefore, he did not violate 26 U.S.C.A. § 7206(1) and accordingly cannot be denied naturalization for lacking good moral character pursuant to 8 U.S.C.A. § 1101(f). According to El-Ali, an alien's conduct must be particularly heinous, such as deriving income from unlawful gambling or committing concubinage, in order to demonstrate a lack of good moral character. We first address the immigration laws respecting good moral character and then consider whether El-Ali was properly denied naturalization because he violated 28 U.S.C.A. § 7206(1).

A.

The immigration and naturalization laws provide that in order to be naturalized, an alien must possess good moral character and obey the laws of the United States. See 8 U.S.C.A.§ 1427(a) (West Supp. 1995). The immigration and naturalization laws further provide in pertinent part:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which

5

good moral character is required to be established, is, or was--

. . . .

(3) a member of one or more of the classes of persons, whether excludable or not, described in [§ 1182(a)(2)(A) and other sections of the immigration laws], if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

. . . .

(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;

. . . .

The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character.

8 U.S.C.A. § 1101(f) (West 1970 & Supp. 1995). Regulations promulgated pursuant to this section also provide that"[a]n applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character." 8 C.F.R. § 316.10(a) (1995). Section 1101(f)(3) specifically provides that an alien lacks good moral character if he violates 8 U.S.C.A. § 1182(a)(2)(A)(i) (West Supp. 1995), which provides that if an alien is convicted of or "admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude . . . or an attempt or conspiracy to commit such a crime," he is excludable. If, therefore, El-Ali has admitted to a crime of moral turpitude, regardless of whether he was convicted, he may be denied naturalization. El-Ali bears the heavy burden to prove, by clear and convincing evi-

dence, that he has good moral character. See Berenyi v. INS, 385 U.S. 630, 636-37 (1967). Doubts with respect to El-Ali's good moral character must be resolved against him and in favor of the INS. See id. at 637.

Reasoning that El-Ali's misrepresentations on his Ohio and federal tax returns constituted a lack of good moral character because an honest, competent man is cognizant of his residence, the district court held that El-Ali was properly denied naturalization. Analogous decisional law tends to bolster this conclusion. For example, in Jordan v. De George, 341 U.S. 223, 228-30 (1951), the Supreme Court concluded that conspiracy to defraud the United States of tax revenue constituted a crime of moral turpitude, but the Court did not fashion any definitive test for determining a crime of moral turpitude. Generally, violations of the federal tax law constitute crimes of moral turpitude, which, in turn, demonstrate a lack of good moral character. See, e.g., Surrett v. United States, 421 F.2d 403, 406 (5th Cir. 1970) (making, transporting, or selling alcohol and defrauding the Government of taxes from the sale thereof constitutes conduct involving moral turpitude). Particularly apropos here, in United States v. Friedland, 502 F. Supp. 611 (D.N.J. 1980), aff'd sub nom. United States Dist. Court for Dist. of N.J. v. Friedland 672 F.2d 905 (3d Cir. 1981) (unpublished), the district court concluded that a defendant convicted pursuant to 26 U.S.C.A. § 7206(1) of providing false information on a tax return had "obvious[ly]" committed a crime of moral turpitude. Id. at 619-20 (relying on Jordan as "concrete authority for the proposition that [§ 7206(1)] violations . . . are also crimes involving moral turpitude").

In other contexts involving aliens, the courts have discussed the type of conduct that constitutes a crime of moral turpitude. In Zaitona v. INS, 9 F.3d 432, 437-38 (6th Cir. 1993), the Sixth Circuit concluded that an alien's false statements made in completing a driver's license application constituted a crime of moral turpitude, specifically rejecting the contention that the violation arose under the motor vehicle code and thus could not implicate moral turpitude. Because the alien committed a crime of moral turpitude, the Sixth Circuit concluded that the alien was properly deported. Likewise, in Kabongo v. INS, 837 F.2d 753, 758 (6th Cir.), cert. denied, 488 U.S. 982 (1988), the Sixth Circuit concluded that an alien lacked good moral character,

7

and hence was properly deported, because he was convicted of making false statements on an application to obtain a student loan, a crime the court held constituted a crime of moral turpitude. In Calvo-Ahumada v. Rinaldi, 435 F.2d 544, 545-46 (3d Cir. 1970) (per curiam), the Third Circuit concluded that an alien who made a false statement under oath in an application for permanent residence committed a crime of moral turpitude and therefore was properly deported. Similarly, in United States ex rel. Alvarez Y Flores v. Savoretti, 205 F.2d 544, 548 (5th Cir. 1953), the Fifth Circuit concluded that an alien who made false statements that he was not working in the United States in connection with seeking an extension of a temporary stay was properly excluded from entry because his misrepresentation was a crime of moral turpitude. See generally United States v. Gloria, 494 F.2d 477, 481 (5th Cir.) (explaining that conduct involving dishonesty or falsehood constitutes a crime of moral turpitude), cert. denied, 419 U.S. 995 (1974).

El-Ali is incorrect in asserting that the offending conduct must be as egregious as unlawful gambling or concubinage to constitute a crime of moral turpitude. El-Ali's conduct is not dissimilar from that of other aliens who have rendered false information in connection with seeking to establish residency in the United States. As the decisional law reveals, supplying false information in connection with seeking naturalization can result in excludability or deportation, and, under these precedents, denying El-Ali naturalization based on misrepresentations on his 1991 and 1992 Ohio and federal tax returns is eminently logical, provided he violated 26 U.S.C.A.§ 7206(1), the issue to which we now turn.

B.

The Internal Revenue Code provides in pertinent part:

> Any person who--
>
> (1) Declaration under penalties of perjury .-- Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he

8

does not believe to be true and correct as to every material matter;

. . . .

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . . or imprisoned . . . or both . . . .

26 U.S.C.A. § 7206(1) (West 1989). A violation of § 7206(1) requires:

(1) . . . making and subscribing of a tax return which contained a written declaration that it was made under the penalties of perjury; (2) the maker or subscriber did not believe the return to be true and correct as to every material matter; and (3) the maker or subscriber acted in a willful, as opposed to a negligent manner.

United States v. Edwards, 777 F.2d 644, 651 (11th Cir. 1985), cert. denied, 475 U.S. 1123 (1986). Proof of willfulness is essential to support a violation of § 7206(1), see United States v. Bishop, 412 U.S. 346, 360-61 (1973), and for his conduct to have been willful, El-Ali must have intended to violate the law or have known that his conduct would do so, see United States v. Cheek, 498 U.S. 192, 201 (1991). In establishing willfulness, all the facts and circumstances of a defendant's conduct are considered, United States v. Marabelles, 724 F.2d 1374, 1379 (9th Cir. 1984), and willfulness may be inferred from "concealment," "covering up," duplicitous record-keeping, and "any conduct, the likely effect of which would be to mislead or to conceal," Spies v. United States, 317 U.S. 492, 499 (1943). Therefore, willfulness may be proved by circumstantial evidence. See Black v. United States, 309 F.2d 331, 342 (8th Cir. 1962) (finding circumstantial evidence of willfulness sufficient to suport conviction), cert. denied, 372 U.S. 934 (1963). In this regard, a defendant cannot claim innocence by asserting that a professional prepared his tax return if he misled or failed to supply information to the preparer. See United States v. Garavaglia, 566 F.2d 1056, 1060 (6th Cir. 1977) (explaining that a defendant cannot omit or conceal information from his tax preparer

9

and then attempt to claim innocence by averring that he is absolved of liability because a professional prepared his tax return).

C.

Here, El-Ali filed tax returns that were not "true and correct as to every material matter," namely that he declared under penalty of perjury that he resided in Ohio, knowing that he resided in Virginia. We agree with the district court that El-Ali's knowledge of his residence does not implicate the complexities of the tax law. Nevertheless, we conclude that a genuine issue of material fact regarding El-Ali's willfulness precludes a grant of summary judgment on the record before us; accordingly, we vacate the judgment and remand for further proceedings consistent with our opinion.

III.

While the district court correctly concluded that a person who willfully falsifies his address on his tax return may properly be denied naturalization as lacking good moral character, we nevertheless conclude that a genuine issue of material fact with respect to El-Ali's willfulness precludes a grant of summary judgment on the present record. On remand, the record may be sufficiently developed so that summary judgment would be proper, but we leave that issue for the district court to address in the first instance.

VACATED AND REMANDED

HALL, Circuit Judge, concurring:

I join fully in the opinion of the court. I write separately to note that, although El-Ali's burden on remand will be a heavy one, it should not be onerous. Braun v. INS, 992 F.2d 1016 (9th Cir. 1993), addressed the matter before us within the context of a deportation proceeding, but its reasoning applies with no less force here: "[Section 1182] only contemplates exclusion of aliens who have been convicted or who freely and voluntarily admit their guilt. It does not contemplate exclusion of an alien by transforming a deportation hearing into a criminal trial." Id. at 1019.

10

From the moment of his confrontation with the interview examiner, El-Ali has steadfastly denied any wrongdoing. In truth, the only evidence of "guilt" that the INS has before it are El-Ali's signed tax returns bearing his in-laws' address; however, that El-Ali intentionally signed a tax return containing incorrect information does not mandate a conclusion that he specifically intended to deceive or defraud the government by doing so.

Indeed, the circumstances in this case appear to indicate just the opposite. El-Ali came to this country, diligently found employment (which he yet retains), started a family, and strove to assist his new father-in-law by purchasing a grocery store for him to run. There is abundant evidence in the record from which the trier of fact could conclude that El-Ali simply made an innocent mistake, perhaps as a result of giving his father-in-law too free a rein, or by relying too much on the tax preparer. Moreover, it strains credulity to posit that El-Ali would willfully file a false tax return, then, unbidden, bring a copy of it to the immigration interview.

Finally, I must say that I am troubled by the alleged conduct of the interview examiner in this case. According to El-Ali, the examiner called him a "crook" and a "criminal," accused him of committing fraud, and opined that he "should be deported,[because] we don't want people like you in this country." I hasten to point out that the interview examiner has flatly denied making these statements, but, if the allegations are true, it seems to me that the INS has a much larger problem than a few incorrect tax returns.

11