MATTER OF RICE

In Visa Petition Proceedings

A–21266592

A–21266593

*Decided by Board January 27, 1977*

(1) Article 66 of the Philippine Civil Code provides that when one or both of the contracting parties to a marriage are citizens or subjects of a foreign country, it shall be necessary, before a marriage license can be obtained, to provide themselves with a certificate of legal capacity to contract marriage, to be issued by their respective diplomatic or consular officials. However, despite the lack of such a certificate a marriage license was issued and the marriage was contracted.

(2) The officer in charge concluded that the marriage was void under Philippine law and invalid for immigration purposes, and denied the immediate relative visa petitions filed by petitioner for his wife and daughter under section 201(b) of the Immigration and Nationality Act.

(3) Where the petitioner and beneficiary had the intent and capacity to marry when the license was presented to the municipal judge who performed the ceremony, the marriage was valid, notwithstanding failure to obtain the certificate of legal capacity from the consul under Article 66, and the visa petitions will be granted.

ON BEHALF OF PETITIONER: Pro se

BY: Milhollan, Chairman; Wilson, Torrington, Maniatis, and Appleman, Board Members

The United States citizen petitioner applied for immediate relative status for the beneficiaries as his wife and child under section 201(b) of the Immigration and Nationality Act. In a decision dated October 15, 1976, the Officer in Charge denied the petitions. He has certified his decision to the Board for review pursuant to 8 C.F.R. 3.1(c). His decision will be reversed and the visa petitions will be approved.

The adult beneficiary is a native and citizen of the Philippines. She and the petitioner married on June 15, 1972, while the petitioner was serving in the United States Armed Forces. Both parties were 18 years old. A daughter was born of this union in the Philippines. The child did not acquire United States citizenship because her birth occurred a month before her father reached the age of 19. See section 301(a)(7) of the Immigration and Nationality Act. The couple's son, born three years later, did derive United States citizenship from the petitioner.

The petitioner now seeks immediate relative status for his wife and daughter in order to bring the family back to his home state of Tennessee.

The Officer in Charge concluded that the petitioner's marriage is invalid under the law of the Philippines, and hence, must be considered invalid for immigration purposes. This conclusion is based on the petitioner's admission that he failed to comply with Article 66 of the Philippine Civil Code.

The Officer in Charge is correct in applying the general rule that the validity of a marriage is determined by the law of the place of celebration—in this case—the Philippines. *Matter of Gamero,* 14 I. & N. Dec. 674 (BIA 1974); *Matter of P—,* 4 I. & N. Dec. 610 (BIA 1952; A.G. 1952); *Matter of Levine,* 13 I. & N. Dec. 244 (BIA 1969).

In order to determine whether noncompliance with Article 66 invalidated the petitioner's marriage, we must refer to Title III of the Civil Code of the Philippines. Title III sets out numerous procedures to govern the licensing and solemnization of marriages. It also indicates which irregularities in the licensing and solemnizing process will render a marriage void, ab initio and which may subject the validity of a marriage to attack in a suit to annul.

Article 66 is one of several licensing provisions which are aimed at assisting in the enforcement of other marriage laws, by requiring persons who are not qualified to marry, to reveal such fact before the marriage is contracted. All applicants for marriage licenses must supply information, under oath, concerning age, relationship between them, if any, prior marriages, and whether such marriages have been dissolved by death or annulment (Article 59). In the case of foreigners, such as the petitioner, a certificate from diplomatic officials is required under Article 66 to help insure that the party has the required capacity to contract the marriage. Article 66 provides—

> When either or both of the contracting parties are citizens or subjects of a foreign country, it shall be necessary, before a marriage license can be obtained, to provide themselves with a certificate of legal capacity to contract marriage, to be issued by their respective diplomatic or consular officials.

As the text of Article 66 indicates, a license should not be issued to a foreigner unless the certificate of capacity is furnished. However, in the petitioner's case, despite the absence of such a certificate, a license was issued. Hence, the question becomes—is the marriage which is subsequently entered into void or voidable because of this procedural irregularity?

Under the applicable provisions of the Civil Code of the Philippines (Articles 53, 80, 81, 82, and 83), the following requirements are essential to the validity of a marriage: (1) the contracting parties must have the legal capacity to marry each other; (2) their consent to the marriage

must be freely given; (3) the parties must have a marriage license, except in marriages of "exceptional character"; and (4) the person solemnizing the marriage must be duly authorized. Due to the mandatory nature of these requirements, failure to comply with any of them will render the contract void, ab initio. There is no suggestion in the record that either the petitioner or the beneficiary lacked the intent or the capacity to marry when they presented their marriage license to the municipal judge who performed the ceremony. Thus, we conclude that despite the petitioner's failure to provide a certificate of capacity, his marriage is not void under Philippine law.

On the issue of voidability, Article 85 allows parties or their parents to challenge the validity of a marriage in certain situations, by bringing a suit to annul. These provisions have no application here, however, since the parties are attempting to establish the validity rather than the voidability of their marital contract. Moreover, we note, parenthetically, that none of the grounds of which an existing marriage may be annulled have to do with an improperly issued marriage license. (See Articles 80, 81, 82, 83.)

We conclude that in this case, where the petitioner possessed the legal capacity to marry, his failure to obtain a certificate of legal capacity did not invalidate his marriage under the law of the Philippines.[1] Accordingly, we will consider his marriage valid for immigration purposes. The visa petitions predicated on the marriage will be approved.

**ORDER:** The decision of the Officer in Charge is reversed; the visa petitions are approved.

---

[1] In *Matter of Dagamac*, 11 I. & N. Dec. 109 (BIA 1965), passing reference is made to Article 66 of the Philippine Civil Code. The case, however, does not address the issue raised here. In *Dagamac*, the petitioner did not possess the legal capacity to marry the beneficiary; hence, the mere lack of a certificate of capacity was not the critical issue.