**Imelda Napuli ISRAEL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 84–7818.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1986.

Decided March 24, 1986.

Linda Adams, Rose Collantes, Dept. of Justice, Washington, D.C., for respondent.

Before FARRIS, PREGERSON, and NORRIS, Circuit Judges.

PREGERSON, Circuit Judge:

Petitioner Imelda Napuli Israel seeks review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from a decision by an immigration judge (IJ) denying her motion to reopen her deportation proceedings. Israel sought to reopen the proceedings to apply for adjustment of status based on her marriage to a United States citizen. *See* 8 U.S.C. §§ 1151(b), 1255. We have jurisdiction under 8 U.S.C. § 1105a(a). We grant the petition and remand.

## BACKGROUND

Israel, a Philippine national, entered the United States legally as a temporary worker in December 1982, with permission to remain and work until September 9, 1983. After repeatedly seeking an extension, Israel overstayed her visa, and the Immigration and Naturalization Service (INS) took her into custody on September 19, 1983. On September 20, in a telephonic bond-reduction and deportation hearing, Israel conceded deportability, and the IJ granted her 30 days to depart voluntarily, based partly on her promise not to marry a United States citizen during that time.

Eleven days later, on October 1, petitioner married Jose Din Israel, a serviceman in the United States Navy and a United States citizen. They had been seeing each other for several months before the deportation hearing. On October 14, Israel's husband filed a visa petition on her behalf, and Israel filed a motion to reopen her deportation hearing to allow consideration of her application for adjustment of status.

The IJ denied the motion to reopen because he considered Israel guilty of "a breach of faith and a misrepresentation to

Bernard Cooper, Los Angeles, Cal., for petitioner.

the Court." The BIA dismissed her appeal on the ground that neither the equity inherent in her marriage nor the hardship to her citizen spouse was entitled to much weight, because the marriage took place after Israel had been found deportable.

Israel contends that the BIA acted arbitrarily in dismissing her appeal because her case is not factually distinguishable from *Matter of Garcia*, 16 I. & N. Dec. 653 (BIA 1978), where the BIA established a policy of granting reopening in cases like hers.

## STANDARD OF REVIEW

■ We review BIA denials of motions to reopen for an abuse of discretion and will not disturb the BIA's ruling unless the BIA has acted arbitrarily, irrationally, or contrary to law. *Sangabi v. INS*, 763 F.2d 374, 375 (9th Cir.1985). The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so. *Sang Seup Shin v. INS*, 750 F.2d 122, 125 (D.C.Cir. 1984); *accord Williams v. INS*, 773 F.2d 8, 9 (1st Cir.1985); *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982).[1]

1. As the District of Columbia Circuit stated in *Shin,*

> The BIA unquestionably has wide discretion in determining what circumstances warrant reopening a deportation proceeding.... Broad as the BIA's discretion is, however, that tribunal may not act arbitrarily or irrationally. It may not proceed at whim, shedding its grace unevenly from case to case. It must explain departures from settled policies, ... and it may not unaccountably disregard on one day considerations it held relevant on another day.

750 F.2d at 124–25.

2. The BIA's opinion in *Garcia* does not give the date of Garcia's marriage, but it implies that the marriage took place after Garcia had been ordered deported. 16 I. & N. Dec. at 654. The fact that the BIA granted Garcia's motion to reopen suggests that the evidence relating to his marriage could not have been presented at his original deportation hearing. *See* 8 C.F.R. § 3.2. Moreover, in oral argument before this court, counsel for the INS conceded that the legally relevant facts in *Garcia* and *Israel* are indistinguishable.

3. The new policy announced in *Garcia* was based on a change in the law and implementing regulations. An alien applying for adjustment of status under 8 U.S.C. § 1255 must show that

## DISCUSSION

The issue before us is whether the BIA's denial of Israel's motion to reopen was arbitrary because it constituted an unexplained departure from the policy the BIA established in *Garcia*. Like Israel, the alien in *Garcia* married a United States citizen and then filed a motion to reopen deportation proceedings to apply for adjustment of status based on marriage, which took place after the alien was found deportable and granted voluntary departure.[2] *Garcia*, 16 I. & N. Dec. at 653–54. In that context, the BIA announced the following policy: "[W]e shall hereafter generally reopen the deportation proceedings in such cases unless clear ineligibility is apparent in the record." *Id.* at 654. The BIA went on to state: "[W]e believe that discretion should, as a general rule, be favorably exercised where a prima facie approvable visa petition and adjustment application have been submitted in the course of a deportation hearing or upon a motion to reopen."[3] *Id.* at 657.

The BIA in *Garcia* reopened the proceedings solely on the basis of the alien's last-

he or she: (1) is admissible for permanent residence and eligible for an immigrant visa; and (2) has an immigrant visa "immediately available." 8 U.S.C. § 1255(a); *Ahwazi v. INS*, 751 F.2d 1120, 1122 n. 1 (9th Cir.1985). Before 1977, the INS would routinely deny adjustment applications submitted simultaneously with visa petitions because the visa in such cases would by definition not be immediately available. The petition had to be first processed and approved for the visa to become "available." *Garcia*, 16 I. & N. Dec. at 654.

In 1976 Congress amended section 1255's provision for dating the adjustment application, and the INS accordingly amended its regulation to provide for the simultaneous filing of a visa petition and an adjustment application. 8 C.F.R. § 245.2(a)(2) (1985); *Garcia*, 16 I. & N. Dec. at 654–55. The BIA in *Garcia* recognized that the new simultaneous filing provision would be nullified if the INS continued its previous practice of requiring already-available visas. Accordingly, the BIA established a new policy for simultaneously filed adjustment applications and visa petitions: unless it is clear from the record that the petition would not be approved, or that the adjustment application would be denied on statutory grounds, or as a matter of discretion notwithstanding approval of the petition, the motion to reopen should be

minute marriage to a citizen, and did not require Garcia to show any additional equities. *Id.* at 657–8. The BIA apparently considered the fact of marriage to a citizen an equity sufficient to warrant reopening. *Id.*[4]

■■■ The BIA in *Garcia* qualified its policy of normally granting reopening in marriage cases by stating that it did not intend

> to establish an inflexible rule requiring the immigration judge in all cases ... to reopen the proceedings.... It clearly would not be an abuse of discretion for an immigration judge to summarily deny ... a motion to reopen upon his determination ... that the adjustment application would be denied ... in the exercise of discretion notwithstanding the approval of the petition.

*Id.* at 657. The BIA, however, cannot properly rely on that qualification in this case. The BIA acts arbitrarily when it exercises its discretion to deny a reopening in one case when it has granted a reopening in another factually similar case. The BIA "may not proceed at whim, shedding its grace unevenly from case to case." *Shin,* 750 F.2d at 124–25. In the instant case, the INS attorney admitted at oral argument that the legally relevant facts in Israel's case and in *Garcia*'s case are identical.

The INS argues that the BIA amended the *Garcia* policy in *Matter of Guiragossian,* 17 I. & N. Dec. 161 (BIA 1979). This argument is unpersuasive. *Guiragossian* restates the *Garcia* rule with a slightly different emphasis, but does not change it in a way relevant here.[5]

The INS also argues that the BIA's decision in this case is consistent with the BIA's decisions that we upheld in *Obitz v. INS,* 623 F.2d 1331 (9th Cir.1980) (en banc); *Ahwazi v. INS,* 751 F.2d 1120 (9th Cir. 1985); and *Vasquez v. INS,* 767 F.2d 598 (9th Cir.1985). This argument is also unpersuasive.

*Obitz* is irrelevant to the question whether the BIA has changed its *Garcia* policy. The relevant BIA action in *Obitz,* the BIA's 1977 denial of Obitz's first motion to reopen, predated the *Garcia* decision.

In *Ahwazi* and *Vasquez,* the BIA denied motions to reopen to apply for adjustment of status. In each case, the BIA premised its denial on the fact that the alien had repeatedly violated immigration law,[6] and that these repeated violations outweighed the equity of the alien's last-minute mar-

---

granted and the adjustment application retained pending a ruling on the visa petition. *Id.* at 657.

**4.** *See also Matter of Cavazos,* 17 I. & N. Dec. 215, 217 (BIA 1980) (the fact that the alien was married to a citizen and had a citizen child outweighed the adverse factor of having entered the United States with a preconceived intent to remain); *Matter of Ibrahim,* 18 I. & N. Dec. 55, 57–58 (BIA 1981) (distinguishing *Cavazos* and stating that marriage to a citizen is "a special and weighty equity" accorded "most favorable status" by Congress and therefore outweighs even such a "serious adverse factor" as entry with preconceived intent to remain); *Matter of Zangwill,* 18 I. & N. Dec. 22, 28 (BIA 1981) (explicitly following *Garcia* policy and implying that the alien's last-minute marriage outweighed several adverse factors, including having stayed in this country for years after the expiration of his original visitor's visa and having been convicted of passing bad checks).

**5.** A footnote in *Guiragossian* explains that the *Garcia* policy relates solely to one factor in deciding an application for adjustment of status:

the "immediate availability" of the applicant's visa. If the visa petition is prima facie approvable, the adjustment application should not be denied solely because the visa petition has not yet been approved. Applicants still have the burden of showing both that they satisfy the statutory requirements and that relief is warranted as a matter of discretion. *Guiragossian,* 17 I. & N. Dec. at 164 n. 5; *See also Matter of Rodriguez,* 17 I. & N. Dec. 105, 107 (BIA 1979).

This is no change from *Garcia. See supra* note 3. The question here is whether aliens in Israel's situation must present additional equities—beyond the fact of being married to a citizen—to satisfy their burden of showing that relief is warranted as a matter of discretion. Neither *Guiragossian* nor *Rodriguez* addresses that question.

**6.** In addition to having overstayed their initial student visas, both aliens in *Ahwazi* failed to leave the country when ordered to do so. *Ahwazi,* 751 F.2d at 1121. Similarly, the alien in *Vasquez* both overstayed his initial visitor visa and later violated a grant of voluntary departure. *Vasquez,* 767 F.2d at 600.

riage to a citizen. *Ahwazi*, 751 F.2d at 1123; *Vasquez*, 767 F.2d at 600–01.

█ The instant case is distinguishable from *Ahwazi* and *Vasquez* in two respects. First, as in *Garcia*, the BIA did not find that Israel repeatedly violated immigration law. Indeed, it is difficult to imagine a more minimal violation of immigration law in the context of a motion to reopen.[7] In fact, the BIA failed to cite a single adverse factor relevant to its exercise of discretion in considering Israel's motion, except for the fact that she had previously been found deportable, which would be true of any alien filing a motion to reopen.[8]

Second, the BIA did not rely on an *Ahwazi*-type balancing in considering Israel's motion to reopen. Although the BIA minimized the equities inherent in Israel's marriage and the hardship to her citizen husband, it did not conclude that these equities were outweighed by Israel's violation of immigration law.

The issue whether Israel's marriage is a sham is not properly before us. That factual determination can be made when Israel's case is reopened. A factual inquiry will enable the BIA to assess more accurately the weight to ascribe to the equity of Israel's marriage and the hardship of her citizen spouse. Israel is entitled to marry, and under *Garcia* she is entitled to have her case reopened. Her earlier promise not to marry should not have been extracted from her in the first place, and we conclude that it is irrelevant to the determination whether to reopen the case.

## CONCLUSION

Because this case is virtually identical to the *Garcia* case, in which the BIA granted

---

**7.** Israel entered the country legally, and the INS does not suggest she entered with a preconceived intent to remain. She did violate immigration law by overstaying her visa, but any alien submitting a motion to reopen will have been found to have violated the immigration statute that was the basis of deportability.

Nor does it appear that Israel was attempting to hide from the INS. On the contrary, she states that she went to an INS office twice in July 1983 and once in September 1983 to seek an extension of her visa. Indeed, it appears that the only reason the INS was able to take her into custody so soon after her visa expired was that she was attempting to comply with immigration law.

**8.** Israel's motion to reopen was initially denied by the IJ, who relied primarily on what he deemed Israel's "breach of faith" and "misrepresentation to the Court": i.e., the inconsistency between Israel's marriage and her earlier promise that she would not marry. The BIA may have viewed this as an adverse factor, but it did not say so in its opinion, and this court reviews BIA decisions only on the basis of stated rationale. *Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1454–55 (9th Cir.1985); *See also Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983).

The IJ's conduct in this case, however, calls for special comment. The IJ conditioned his grant of voluntary departure on Israel's promise not to marry a United States citizen during that period. Despite making this promise, she married a United States citizen eleven days later. When she subsequently moved to reopen her deportation hearing to allow consideration of her marriage, the IJ found Israel guilty of a "breach of faith and misrepresentation to the Court" and denied her motion.

The Supreme Court has ruled that the right to marry is part of the fundamental "right of privacy" implicit in the Fourteenth Amendment's Due Process Clause. *Zablocki v. Redhail*, 434 U.S. 374, 384, 98 S.Ct. 673, 680, 54 L.Ed.2d 618 (1978). In *Zablocki*, the Court stated: "While the outer limits of [the right of personal privacy] have not been marked by the Court, it is clear that among the decisions that an individual may make without unjustified government interference are personal decisions 'relating to marriage....'" *Id.* at 385, 98 S.Ct. at 680. State action that interferes directly and substantially with the fundamental right to marry must be "supported by sufficiently important state interests" and must be "closely tailored to effectuate only those interests." *Id.* at 388, 98 S.Ct. at 682.

The IJ's act of conditioning his grant of voluntary departure on Israel's promise not to marry represents unjustified government interference in a personal decision relating to marriage. Furthermore, although a promise not to marry may serve the important state interest of discouraging sham marriages, it is imprecise in furthering that interest. A factual inquiry into the legitimacy of the marriage upon reopening of the case speaks more pointedly and straightforwardly to the state's interest in determining the genuineness of the marriage and the immigration consequences for the alien spouse.

the alien's motion to reopen, the BIA acted arbitrarily in treating Israel differently.

We GRANT the petition and REMAND this matter to the BIA to reconsider Israel's motion to reopen in light of the views expressed in this opinion.