89 F.3d 844
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Francisco Vanguardia BATILLER, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70665.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 12, 1996.
Decided July 9, 1996.
 
 1
 Before: GOODWIN and HAWKINS, Circuit Judges, and WARE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner entered the United States on July 14, 1982, claiming to be the unmarried son of a lawful permanent resident. During his deportation hearing, the Immigration and Naturalization Service ("INS") presented a marriage contract indicating that petitioner was married to Edna Y. Pabellan before a municipal judge in the Philippines.
 
 
 4
 At the hearing, petitioner testified that he and Ms. Pabellan did have a marriage ceremony, but that he secretly arranged with the judge for the marriage to be legally invalid. Petitioner explained that Ms. Pabellan was pressuring him to marry her, but he did not want to do so because he was still in medical technology school. Consequently, no marriage license was obtained or issued.
 
 
 5
 At the hearing, petitioner's counsel objected to the INS's offer of petitioner's marriage contract on relevance grounds. Counsel, citing Matter of Agustin, 17 I & N Dec. 14 (B.I.A.1979), noted that a marriage in the Philipines is void without a marriage license. The Immigration Judge ("IJ) stated that he did not believe that Matter of Agustin was applicable because the marriage contract indicated that the marriage was one of exceptional character under Article 76 of Republic Act 386 of the Philippine Civil Code.
 
 
 6
 Counsel then requested a continuance to research Article 76. The IJ denied the request for a continuance, explaining that "the Court does not normally go behind the ... validity of such documents" and, therefore, he saw no reason for a continuance. The IJ proceeded to find petitioner deportable. The hearing was then continued until September 20, 1989, for submission of applications for relief.
 
 
 7
 At the September 20, 1989, hearing, petitioner presented the IJ with an application for suspension of deportation. A hearing on that application was scheduled for January 2, 1991. Petitioner's counsel then requested that, at the hearing on the application, he be allowed to offer Article 76 of Republic Act 386 of the Philippine Civil Code. Counsel explained that Article 76 requires the couple to have lived together five years prior to their marriage date. He also requested that he be allowed to present "additional evidence with respect to ... the circumstances surrounding the marriage and the ... fact that the parties, in fact, did not live together for that period or any period." The following exchange then occurred between counsel and the IJ:
 
 
 8
 Q: Counsel, on the basis of all the public documents of the country in the Philippines, what additional purpose do you think any of this would serve?
 
 
 9
 A: Well, first of all--
 
 
 10
 Q: In as much as the Court is not in a position to go behind at least on their face, legitimate acts by the Philipines government.
 
 
 11
 A: One of the charges in this case is fraud and that's a question of what his state of mind was at his testimony with respect to the circumstances of his marriage, and what he thought as far as the validity of the marriage goes and whatever agreements he had made with respect to that marriage are very relevant to that, that consideration of whether, in fact, he committed fraud.
 
 
 12
 Q: Well, counsel, I believe I indicated at the last hearing that I was satisfied that the government had met its burden of proof with respect to the charges set out in the Order to Show Cause, counsel, as far as I'm concerned, what you're asking the Court to do is go behind the findings at least of the Philippines government. I'm not inclined to do that.
 
 
 13
 The IJ then refused counsel's request. The hearing was continued to January 2, 1991.
 
 
 14
 At the January 2, 1991, hearing, petitioner's counsel argued that petitioner was not deportable because under Philippine law his marriage was void because there was no marriage license and he and Ms. Pabellan had not lived together for five years prior to marriage. At the conclusion of the hearing, the IJ stated:
 
 
 15
 All right. Let me state right up front, Section 76 is the exceptional character provision under the Code, and we have this respondent's testimony versus the official Philippino document. I give great weight to that official record of the Philippines in the absence of countervailing evidence. Again, all that we have is the respondent's testimony regarding that particular matter, and I find this respondent's testimony so farfetched, so far removed from anything close to the truth, or remotely plausible, that I place next to no weight upon that testimony when it's lined up next to the marriage certificate in this case. As far as the Court's concerned, with this marriage certificate the Service has met its burden by clear, convincing and unequivocal evidence.
 
 
 16
 Subsequently, the IJ issued an order finding petitioner deportable and ineligible for suspension of deportation.
 
 
 17
 Petitioner appealed to the BIA, which affirmed. In addressing petitioner's challenge to the IJ's finding that he was deportable, the BIA found no reason to dispute the validity of the marriage contract absent evidence it was a forgery. In a footnote, the BIA stated that although petitioner challenged the IJ's refusal to permit evidence regarding the validity of the marriage or his state of mind, he proffered no evidence on appeal to suggest that such evidence existed or that he was prejudiced by the IJ's decision.
 
 
 18
 Petitioner contends that his due process rights were violated by the IJ's refusal to allow him to present evidence regarding the circumstances surrounding his alleged marriage. "An alien has a Fifth Amendment right to due process, including the right to a full and fair hearing in a deportation proceeding." Burgos-Abril v. INS, 58 F.3d 475, 476 (9th Cir.1995); see also United States v. Gasca-Kraft, 522 F.2d 149, 152 (9th Cir.1975) (due process requires alien in a deportation proceeding have an opportunity to produce evidence). Generally, a due process violation occurs "only if the thing complained of causes the alien to suffer some prejudice."[1] Burgos-Abril, 58 F.3d at 476.
 
 
 19
 First, we find that, contrary to the government's representation, petitioner was not given an opportunity to present evidence regarding the validity of his marriage and his state of mind. Petitioner's counsel twice requested an opportunity to present such evidence and was twice denied. These efforts were sufficient to preserve the issue for review; it not being incumbent upon Petitioner's counsel to attempt to present such evidence in direct defiance of the IJ's rulings.[2]
 
 
 20
 Second, the prejudice to petitioner is clearly evident. Petitioner testified that his marriage is invalid because a marriage license was never issued. For a marriage to be valid under Philippines law, there must be a marriage license, or the marriage must be one "of exceptional character," which means the parties have lived together five years prior. Matter of Rice, 16 I & N Dec. 96 (B.I.A.1977). The face of the marriage certificate is consistent with petitioner's testimony that no license was ever issued. Although the certificate states that the marriage was one of exceptional character, obviously, if the requirements for a marriage of exceptional character were not met, the marriage would be void. Id. Had petitioner been allowed to present evidence corroborating his testimony that he did not meet the requirements for a marriage of exceptional character, he most likely would not have been found deportable, particularly given the IJ's remark that "all that we have is the respondent's testimony regarding that particular matter."
 
 
 21
 Petitioner was also prejudiced because the BIA found that he lied to the IJ regarding the validity of his marriage and, therefore, was ineligible for suspension of deportation. Clearly, the IJ and BIA may have judged his credibility differently in light of evidence supporting his testimony that the marriage was legally void.
 
 
 22
 Furthermore, that the IJ and BIA also relied upon the children's birth certificates in finding petitioner to be married at the time of entry does not alter our view. Although the birth certificates state that petitioner and Ms. Pabellan were married, this is entirely consistent with petitioner's story that he secretly arranged that the marriage not be valid. Presumably, Ms. Pabellan believed the marriage was valid and petitioner did nothing to dissuade her from this belief. Consequently, one would presume that the children's birth certificates would reflect that petitioner and Ms. Pabellan were married.
 
 
 23
 Moreover, the IJ and BIA acted arbitrarily by refusing to look beyond the face of the marriage contract to the substantive law of the Philippines to determine the validity of petitioner's marriage in light of precedent in which the BIA has done so. See Israel v. INS, 785 F.2d 738, 740 (9th Cir.1986) (BIA acts arbitrarily by "disregarding its own precedents and policies without giving a reasonable explanation for doing so").
 
 
 24
 In Matter of Rice, 16 I & N Dec. 96 (B.I.A.1977), the petitioner sought immediate relative status for his wife and daughter. Despite the existence of a marriage license, the Officer in Charge found that the alien's marriage was invalid under the law of the Philippines based upon the alien's admission that he did not comply with Article 66 of the Philippine Civil Code, which requires that citizens of a country other than the Philippines obtain a "certificate of legal capacity to contract marriage" prior to obtaining a marriage license. He therefore concluded that the marriage was invalid for immigration purposes.
 
 
 25
 The BIA explained that the Officer in Charge was "correct in applying the general rule that the validity of a marriage is determined by the law of the place of celebration." In determining whether the alien's marriage was invalid under Philippine law, the BIA explained that it "must refer to Title II of the Civil Code of the Philippines." In doing so, it carefully examined the circumstances under which a Philippine marriage is void. It then examined the evidence in the record to determine whether it supported a finding that one of these circumstances was met. Although the BIA found the marriage to be valid, this case is evidence that the BIA may, and does, look beyond the face of marriage documents to determine the validity of a foreign marriage. Consequently, the BIA acted arbitrarily in failing to do so in this case.
 
 
 26
 Because we vacate the BIA's decision and remand in order that petitioner may present additional evidence regarding the validity of his marriage,[3] we need not consider petitioner's arguments that the BIA erred in denying him relief from deportation.
 
 
 27
 PETITION GRANTED and case REMANDED for additional proceedings consistent with this memorandum.
 
 
 
 *
 Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Service contends that, in addition to showing prejudice, petitioner should have proffered to the BIA Ms. Pabellan's affidavit and the applicable Philippine law to show that the marriage was void. First, the Service fails to cite any authority for the proposition that such a proffer is a prerequisite to relief on appeal. Although the BIA suggested that petitioner should have proffered such evidence, the case cited by the BIA does not so hold. Second, Petitioner did proffer the applicable Philippine law
 
 
 [2]
 The better practice, of course, would have been to permit an offer of proof of the evidence. Among other things, such a practice allows a reviewing court an opportunity to capture the nature of the proposed proof
 
 
 [3]
 We disagree with petitioner that it is incumbent upon the Service to present evidence establishing that his marriage is one of exceptional character. The Service has presented a marriage contract that is prima facie evidence of petitioner's marriage. Petitioner is the party relying on foreign law to prove that the marriage is invalid despite the existence of the marriage contract; therefore, he has the burden of pleading and proving it. Matter of Soleimani, 1989 W.L. 331872 (B.I.A. July 13, 1989)