United States Court of Appeals,

Fifth Circuit.

No. 95-60795.

Eugene WELLINGTON, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

April 1, 1997.

Petition for Review of an Order of the Board of Immigration Appeals.

Before JOLLY, JONES and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Eugene Wellington asks this court to review and reverse the decision of the Board of Immigration Appeals (the "BIA") affirming an immigration judge's decision to deny Wellington's motion to reopen his deportation proceedings. Finding a lengthy list of errors in the processing of Wellington's application, we conclude that the BIA abused its discretion when it denied Wellington's motion to reopen.

I

Wellington was born in Zaire, but is a citizen of Sierra Leone. Wellington first entered the United States as a visitor in July 1986. In August 1989, Wellington married Sandra Caridad Baptist, who was then an alien admitted for lawful permanent residence. Wellington and his wife have two daughters together, ages six and seven, both of whom were born U.S. citizens.

One year later, in August 1990, the Immigration and Naturalization Service ("INS") placed Wellington in deportation

proceedings. In November 1990, Mrs. Wellington filed a petition to have Wellington classified as an "immediate relative" for immigration purposes. The petition was approved on February 1, 1991.[1] In the meantime, Wellington's deportation hearing was twice rescheduled, ultimately to July 11, 1991. At the July 11 hearing, Wellington conceded that he was deportable for violating the terms of his visitor's status by working as a shoe salesman. The immigration judge ordered Wellington deported, but permitted voluntary departure by June 16, 1992.

By that date, no immigrant visa had become available. Wellington did not depart as required. Wellington's wife became a naturalized citizen on September 16, 1992. Because of his wife's naturalization, Wellington was no longer subject to a waiting list, and became immediately eligible for an immigrant visa. 8 U.S.C. § 1151(b)(2)(A)(i).

On March 4, 1993, Wellington filed a motion to reopen his deportation proceedings on the ground that he was now the beneficiary of an immediate relative immigrant visa, and was therefore eligible for adjustment of status. INS indicated that it did not oppose reopening, so long as Wellington provided a copy of his wife's naturalization certificate. The immigration judge

---

[1]Under the Immigration and Naturalization Act (the "INA"), the spouse of a lawful permanent resident may receive an adjustment of status to lawful permanent resident when an immigrant visa becomes available. 8 U.S.C. § 1154(a)(1)(B). Because the number of such visas is limited, an applicant may have to wait two years or more before a visa is available. See §§ 1151(b), 1152(a)(4), and 1153(a). The immediate relatives of U.S. *citizens,* however, are not subject to worldwide limits on the availability of immigrant visas. § 1151(a).

concluded that Wellington had presented a new fact that was material to his deportation proceeding, and granted the motion to reopen on July 21, 1993.

Wellington's hearing on the reopened proceeding was initially scheduled for September 9, 1993. Wellington states that he and his attorney appeared, but that the INS attorney informed the immigration judge that INS was not ready to go forward.[2] The hearing was then rescheduled to October 14. The hearing was subsequently rescheduled two additional times—neither time at Wellington's request—to December 17 and, finally, to January 21, 1994. Notices of all changes were served upon Wellington's attorney, but not upon Wellington himself.

Wellington's attorney misplaced the notice of the January 21 hearing. The attorney submitted an affidavit in which he swore that he had contacted the INS attorney to inquire about the hearing date, and was informed that the hearing was set for January 24. Neither Wellington nor his attorney appeared on January 21. Wellington states that both he and his attorney appeared on January 24. On January 25, the immigration judge issued a form order on which the selection for "neither the respondent nor the respondent's representative was present" was checked. The order continues as follows:

> Therefore, as no good cause was given in regard to the failure to appear at the hearing concerning the request for relief, I find that the respondent has abandoned any and all claim(s)

---

[2]The record does not contain any transcript of this hearing, but INS does not dispute Wellington's statement, and the notice of rescheduling is itself dated September 9.

3

for relief from deportation.

> Wherefore, the issue of deportability having been resolved, it is HEREBY ORDERED for the reasons set forth in the Immigration and Nationalization Service charging document that the respondent be deported to SIERRA LEONE.

Rec. 71 (capitalization in original).

Wellington did not directly appeal the January 25, 1994 order. Instead, through his attorney, Wellington filed a second motion to reopen, in which Wellington again submitted documentation of his wife's naturalization and the birth certificates of his two daughters. Wellington additionally offered the "new fact" of the misinformation provided by the INS attorney, and the fact that his counsel would have been unable to attend a January 21 hearing. Wellington attached an a affidavit from his attorney attesting to the facts surrounding the missed hearing.

INS filed its response opposing Wellington's second motion to reopen one week late. The response was accepted and considered, despite an INS regulation that indicates that motions to reconsider or reopen "shall be deemed unopposed unless timely response is made." 8 C.F.R. § 3.23(b). In its response, INS argued that Wellington's deportation proceedings should not be reopened because Wellington had not established "good cause, within the meaning of the Act" for his failure to appear at the January 21 hearing. The response, filed by the trial attorney, indicated that she had "no recollection" of any conversation with Wellington's attorney.

The immigration judge denied Wellington's second motion to reopen in a written decision filed April 14, 1994. The ruling first observed that an immigrant seeking to reopen a deportation

4

proceeding must make a *prima facie* showing of eligibility for the relief sought. The immigration judge further stated that "when the basis for the motion to reopen is that the immigration judge held the hearing *in absentia,* the alien must establish that he had reasonable cause for his absence from the proceeding." The immigration judge concluded that Wellington had not met the "statutory requirement" of showing reasonable cause for his failure to appear. The court found that it was therefore unnecessary to determine whether Wellington had made the requisite *prima facie* showing of eligibility, and denied the motion to reopen.

The BIA dismissed the appeal on November 22, 1995. The BIA found "no prejudice" to Wellington in the immigration judge's consideration of the untimely response. The BIA further observed that Wellington had been in deportation proceedings for some time, and should have known the importance of appearance. The BIA therefore questioned Wellington's "apparent failure to be independently aware of the hearing date." The BIA concluded, like the immigration judge, that Wellington had failed to establish "reasonable cause for his failure to appear."

This appeal followed.

## II

We have jurisdiction to review the agency's refusal to reopen under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 702-706. The APA specifies, in relevant part, that the reviewing court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise

5

not in accordance with law ... [or] without observance of procedure required by law."  5 U.S.C. § 706(2)(A) and (D).  Although INS enjoys broad discretion over motions to reopen, in this case the agency's decision was both arbitrary and based upon a series of actions that did not accord with the procedures required by law.

A

The INA permits an alien to apply for an adjustment of status if the alien is eligible to receive an immigrant visa, and a visa is immediately available.  8 U.S.C. § 1255(a).  The parties agree that Wellington is statutorily eligible for adjustment of status. The INA does not specify the procedures by which an alien may apply for adjustment.  INS practice requires that aliens who have been found deportable in deportation proceedings seek adjustment of status through the mechanism of reopening their deportation proceedings.  *See Yahkpua v. INS,* 770 F.2d 1317, 1318 (5th Cir.1985) (application for adjustment of status construed as request for reopening).

The motion to reopen is not created by the INA itself, but by the regulations enacted pursuant to the INA. See 8 C.F.R. §§ 3.23(b), 242.22.  Wellington's deportation proceedings were "reopened" as of July 21, 1993.  The much-rescheduled adjustment hearing that Wellington failed to attend was a "deportation proceeding" to which the procedures specified in 8 U.S.C. § 1252 apply.  Subsection (b) of this provision indicates that

> ... If any alien has been given a reasonable opportunity to be present at a proceeding under this section, and without reasonable cause fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may

6

    proceed to a determination in like manner as if the alien were
    present.

If an alien fails without reasonable cause to appear for a hearing
of which he had notice, the immigration judge may properly conduct
an *in absentia* hearing.

If an alien is found deportable or denied discretionary
relief in an *in absentia* hearing, he still may move for reopening.
However, an alien who seeks to reopen a deportation hearing that
was held *in absentia* must, in addition to meeting the normal
standards for reopening, demonstrate "reasonable cause" for his
failure to attend the previous hearing. *U.S. v. Estrada-Trochez,*
66 F.3d 733, 736 (5th Cir.1995); *Patel v. INS,* 803 F.2d 804, 806
(5th Cir.1986). INS argues on this basis that the BIA properly
denied Wellington's motion to reopen because Wellington had failed
to establish "reasonable cause" for his failure to appear at the
January 21 hearing.

We agree with INS that the error of an applicant's counsel in
misplacing the hearing notice does not constitute "reasonable
cause" for the applicant's failure to appear.[3] That point,

---

[3]We do question, however, whether INS' failure to provide
Wellington with *personal* service of the notice would not constitute
"reasonable cause." Under the amended § 1252b(a)(2), INS is
required to provide, "in person," written notice of the time and
place of deportation proceedings, and of the consequences of
failing to appear. The notice in this case complied with these
requirements, except that it was delivered only to Wellington's
attorney, and not to Wellington himself—although Wellington had
provided his current address in his application for adjustment of
status. INS apparently takes the position that the personal notice
requirement applied only to Orders to Show Cause. *In re Grijalva,*
Int. Dec. 3246, 1995 WL 314388, at *6 (BIA 1995). Yet § 1252b
applies by its terms to "deportation proceedings" (as does § 1252,
which the INS repeatedly cites as applicable to this case), and

7

however, is inapposite to this appeal. A demonstration of "reasonable cause" is a prerequisite to reopening a determination reached in an *in absentia* hearing. But no *in absentia* hearing was held in this case.

The statute specifically authorizes *in absentia* hearings, permitting an immigration judge to "proceed to a determination in like manner *as if the alien were present.*" As the cases cited by the BIA in its decision plainly reveal, an *in absentia* hearing is a hearing *on the merits* of the record before the administrative court. *See, e.g., Matter of Balibundi,* 19 I. & N. Dec. 606, 607 (BIA 1988) (affirming decision of immigration judge who "adjudicated the respondent's persecution claim based on the written application submitted by the respondent"); *Matter of Nafi,* 19 I. & N. Dec. 430, 431 (BIA 1987) (alien found excludable in *in absentia* hearing). *See also Patel,* 803 F.2d at 806 (immigration judge ordered alien deported in *in absentia* hearing "after reviewing the documentary evidence").

There is no evidence in the record to indicate that Wellington's application for adjustment of status was adjudicated on the merits of the record before the immigration judge.[4] On the

_____

states that "written notice shall be given in person to the alien ... in the order to show cause *or otherwise* ..." § 1252b(a)(2)(A). Also, we have previously applied the provisions of § 1252b in appeals concerning relief from deportation. *See Estrada-Trochez,* 66 F.3d at 736 n. 1.

[4]That record contained a copy of Mrs. Wellington's naturalization certificate, a copy of the Wellingtons' marriage certificate (which reveals that the couple had married before Wellington was first placed in deportation proceedings), and Wellington's application for adjustment of status, which indicates

8

contrary, the boilerplate order of January 25, 1994 states that Wellington's application was deemed "abandoned" due to his failure to appear.

Under 8 C.F.R. § 103.2(b)(13), an application or petition shall be considered "abandoned" if the applicant or petitioner fails to submit requested evidence or to appear for an interview. Presuming that the adjustment hearing may be construed as an "interview," the immigration judge properly concluded that Wellington had "abandoned" his application within the meaning of the regulation. We have no occasion to determine whether the regulation comports with the requirements of 8 U.S.C. § 1252(b), because Wellington has not appealed the decision of the immigration judge that his application for adjustment of status should be denied due to abandonment.[5] We conclude only that this decision is *not* the equivalent a determination reached in an *in absentia* hearing. Because no *in absentia* hearing was held, the rule that *in absentia* determinations may only be reopened upon a showing of "reasonable cause" is inapplicable.

B

The effect of the January 25, 1994 decision was simply to reinstate the previous deportation determination. The decision ordered deportation "for the reasons set forth in the Immigration

that the couple has two young children who are U.S. citizens.

[5]We observe that the same regulation states that a denial due to abandonment may not be appealed, although the applicant may move to reopen, as Wellington did in this case. 8 C.F.R. § 103.2(b)(15).

and Naturalization Service charging document"; the sole charging document in the record is the August 1990 Order to Show Cause.

Accordingly, we conclude that Wellington's February 23, 1994 motion to reopen, is (as it states) a motion to reopen the 1991 proceedings and the resulting December 1991 order of deportation. An alien seeking to reopen a deportation proceeding must both establish eligibility and demonstrate that the "equities" in his case will weigh in favor of granting the discretionary relief for which reopening is sought. *Yahkpua,* 770 F.2d at 1320. We review denials of motions to reopen for abuse of discretion. *INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 725, 116 L.Ed.2d 823 (1992).

In this case, the immigration judge and the BIA erred by holding Wellington's motion to reopen to the showing required to reopen a determination reached in an *in absentia* hearing. Under the proper standard, it appears that Wellington's motion to reopen should be granted. In his motion, Wellington offers the fact that an immigrant visa is now immediately available to him because of his wife's naturalization on September 16, 1992, combined with the visa petition approved in 1991. This fact is material because it makes Wellington eligible for an adjustment of status to lawful permanent resident, and it could not have been presented at the July 1991 hearing.

Wellington's motion additionally offers substantial evidence of "equities" weighing in his favor. He attached two Louisiana birth certificates that indicate that Wellington and his wife were

10

married and had a child together before Wellington was ever placed in deportation proceedings, and that Wellington has two young daughters who are U.S. Citizens by birth. The equities weighing in Wellington's favor appear to exceed those in other cases where reopening has been granted so that an alien could pursue an "immediate relative" adjustment of status. *See Israel v. INS,* 785 F.2d 738, 740-41 (9th Cir.1986) (discussing "spouse of citizen" cases).

Although decisions on motions to reopen are discretionary, an agency may not depart from its settled policies without offering a reasoned explanation. *INS v. Yang,* --- U.S. ----, ----, 117 S.Ct. 350, 353, 136 L.Ed.2d 288 (1996) ("an irrational departure from [settled] policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as "arbitrary, capricious [or] an abuse of discretion' within the meaning of the Administrative Procedure Act"); *Israel,* 785 F.2d at 742 (holding BIA decision "arbitrary" for refusing reopening without explanation in case with facts "indistinguishable" from another in which reopening was granted).

The BIA and the immigration judge erred by applying the wrong legal standard to Wellington's motion to reopen. The immigration judge additionally erred by failing to consider the motion unopposed, as required by INS' own regulations. These errors were prejudicial to Wellington, for had his "unopposed" motion to reopen been reviewed under the proper standard, it should have been granted.

## III

Accordingly, we conclude that the BIA abused its discretion when it affirmed the decision of the immigration judge to deny Wellington's motion to reopen. We therefore REVERSE the judgment of the BIA and REMAND the case for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.