GRABER, Circuit Judge,
concurring in part and dissenting in part:
I dissent from Part IILC.ii of the panel’s decision, but concur as to the other parts and concur in the result. I write separately for two reasons.
1. Under Ninth Circuit precedent, we have jurisdiction to review the BIA’s denial of Petitioner’s claim for relief under CAT, even though 8 U.S.C. § 1252(a)(2)(C) strips federal courts of jurisdiction to review an order of removal against an alien who is removable by reason of having committed an aggravated felony, except as to legal or constitutional questions. Our court has read an additional exception into the statute’s otherwise unequivocal text, under which we review such orders if the BIA did not rest its decision on the fact of the aggravated felony but instead denied relief from removal on the merits. That interpretation of § 1252(a)(2)(C) ignores the statute’s text and conflicts with the views of at least four of our sister circuits.
I have discussed my objection to the judicially fashioned “on the merits” exception at greater length in my concurring opinion in Pechenkov v. Holder, 705 F.3d 444, 449-52 (9th Cir.2012). In Pechenkov, this exception did not apply, so its validity was irrelevant to the result. Here, though, we assert jurisdiction over Petitioner’s CAT claim because the BIA denied that claim on the merits. This case therefore squarely presents us with an opportunity to correct our flawed interpretation of 8 U.S.C. § 1252(a)(2)(C), should we take the case en banc.
2. I dissent from Part III.C.Ü because, in my view, the BIA’s “meaningful risk of harm” rationale applies legal principles that are neither new nor erroneous, and because it is premised on factual considerations that, under 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to review.
The majority relies on Israel v. INS, 785 F.2d 738, 740 (9th Cir.1986), in which we reversed the denial of a petitioner’s motion to reopen deportation proceedings because “[t]he BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so.” The majority charges that the BIA disregarded decisions in which various crimes, committed under various circumstances, were determined to be either “particularly serious” or not. See, e.g., In re N-A-M-, 24 I. & N. Dec. 336, 343 (B.I.A.2007) (holding that felony menacing involving the use or threatened use of a deadly weapon was “particularly serious”); Matter of B- 20 I. & N. Dec. 427, 429-30 (B.I.A.1991) (holding that aggravated battery in which the petitioner had injured someone with a shot from a firearm was “particularly serious”); Matter of Frentes-cu, 18 I. & N. Dec. 244, 247 (B.I.A.1982) (holding that unarmed burglary of an apparently unoccupied building without any aggravating circumstances was not “particularly serious”). After reviewing those cases (and others), the majority concludes that the BIA committed legal error by failing to explain why Petitioner’s conduct more closely resembles the crimes that were found in the past to be “particularly serious” than those that were not.
*1051 For two reasons, the majority fails to persuade me. First, Israel reviewed a different type of decision: whether to allow the reopening of a proceeding. 785 F.2d at 740. That question does not implicate the jurisdictional restriction imposed by 8 U.S.C. § 1252(a)(2)(C), which applies here. Because that statute prohibits us from reviewing Petitioner’s removal order except as to legal questions, we cannot overturn the BIA’s particularly serious crime determination merely because we find the Board’s decision to be “arbitrary” as a matter of factual application or as an exercise of judgment.
Second, even if Israel provides the proper framework for our review, the BIA did not depart from its precedents. To determine that Petitioner’s crime was “particularly serious,” the BIA applied the Fren-tescu/Carballe standard. According to that well-established legal rule, an individual’s criminal conduct is “particularly serious” if “the alien, having been convicted of that crime, can be said to represent a danger to the community.” Matter of Q-T-M-T- 21 I. & N. Dec. 639, 654 (B.I.A. 1996) (en banc) (citing Matter of Carballe, 19 I. & N. Dec. 357, 360-61 (B.I.A.1986); Frentescu, 18 I. & N. Dec. 244). Although “there are some crimes that are inherently ‘particularly serious’ while others clearly are not,” for other crimes the BIA must make a case-specific determination “by considering the nature of the conviction, the circumstances and underlying facts of the conviction, the sentence imposed, and whether the type and circumstances of the crime indicate the alien will be a danger to the community.” Carballe, 19 I. & N. Dec. at 360; see also N-A-M-, 24 I. & N. Dec. at 342 (holding that the “particularly serious crime” analysis involves consideration of “all reliable information ..., including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction”).
In this case, the BIA identified the foregoing legal standard correctly and proceeded to apply it by considering the particular facts surrounding Petitioner’s crime. If the BIA purported to establish a general rule that made the crime of resisting arrest “particularly serious” per se, we might demand that it explain why that crime categorically is more serious than other crimes that the Board has considered not to be “particularly serious.” But it did not. After adequate consideration of relevant facts, the BIA held only that Petitioner’s criminal conduct, under all the circumstances, was such that he could be said to present a danger to the community. Those facts included that Petitioner ran through traffic to evade arrest, assumed a “fighting stance” in relation to a police officer, shoved the officer, and required the officer to use a taser by refusing repeatedly to respond to oral commands.
I acknowledge that an agency “may not depart, sub silentio, from its usual rules of decision to reach a different, unexplained result in a single case.” California Trout v. FERC, 572 F.3d 1003, 1023 (9th Cir. 2009) (internal quotation marks omitted). Here, though, the agency did explain the result it reached, and it did so through a reasoned and reasonable application of its well-established rules for determining whether a crime is particularly serious. The fact that no previously published decision of the BIA applied those principles to the same crime or to the exact set of circumstances at issue here does not render it a “significant departure from [the agency’s] own prior precedent.” Shaw’s Supermarkets, Inc. v. NLRB, 884 F.2d 34, 36 (1st Cir.1989). Rather, the BIA’s application of its precedent to the facts of this case was consistent with its applications of the very same analytical rules in Matter of N-A-M- and Matter of B-. In each case, the BIA rested its decision on its finding that the petitioner’s conduct—which, in *1052 this case, included theft, running into traffic while fleeing from police officers, and a physical assault on a police officer—presented a danger to the community because it created a meaningful risk of harm to others.
Whatever else they may require, Israel and California Trout do not mean that an agency commits legal error if it fails to distinguish the entire gamut of factual situations in which it has previously applied the legal standard at issue. In holding to the contrary, the majority finds legal error in what is in fact a judgment call that reflects the Board’s evaluation of the specific facts of this case. I therefore cannot join Part III.C.Ü.